CONSOLIDATED OIL WELL PACKER CO., (Limited,) *v.* EATON, COLE & BURNHAM CO.

*(Circuit Court, D. Connecticut.  July 20, 1882.)*

PATENTS FOR INVENTIONS.

Where plaintiff, when suit was commenced, owned the patent, and owned the entire interest in the claim for profits and for damages for past infringements, he may recover for infringements committed before he owned the patent.

*George Harding,* for plaintiff.

*James C. Boyce,* for defendant.

SHIPMAN, D. J.   This is a bill in equity to restrain the defendant from the further infringement of reissued letters patent, dated February 6, 1877, to H. H. Doubleday, assignee by mesne assignments of Owen Redmond; also of reissued letters patent, dated July 3, 1877, to H. H. Bliss, assignee of John R. Cross; also of reissued letters patent, dated July 25, 1876, to H. H. Doubleday, assignee of Francis Martin; also of reissued letters patent, dated November 12, 1878, to Alonzo H. Fowler; the original patent being to said Fowler and Edward J. Morgan, and said Fowler being the assignee of said Morgan. All the patents are for improvements in packing for oil or deep wells. The bill also prays for an accounting of the profits and damages arising from prior infringements.   The original patents were issued as follows: The Redmond patent, upon October 30, 1866; the Cross patent, upon February 7, 1865; the Martin patent, upon September 12, 1865; and the Fowler and Morgan patent, upon November 28, 1865.

Oil wells formerly had ordinarily a diameter of about five and one-half inches, and were lined with an iron tube of about two and one-half inches in diameter.   The space between the tube and the walls of the well must be closed at some point between the oil-producing rock and the water fissures, else the surface water would prevent the oil from flowing into the well.   The common method of shutting off this water was to use a leather bag "of about the same diameter of the bore of the well, and from four to six feet in length.   This bag was placed on the outside of the tubing, and located at such point on the tubing as had been previously determined would shut off the surface water, the bag being secured to the tubing by being tied with a string at its lower end.   It was then filled with flaxseed and loosely tied to the tubing at its upper end."   The tube was lowered into the well,

and in a short time the seed, having become moistened, swelled and packed the space between the wall and tube. Packers of various kinds are now used for the same purpose, and also to prevent the gas from escaping between the tube and the wall of the well.

The defendant, a manufacturing corporation, made, between June 10, 1878, and October 9, 1878, in Bridgeport, in this district, and shipped to a corporation in Bradford, Pennsylvania, to be there used, 17 complete and 165 incomplete packers. The incomplete packers had nearly all the requisite parts, and were purposely made to receive the omitted parts, which were to be supplied in Pennsylvania.

The defendant's packer "consists of a telescopic joint formed of two members, the lower member being a cylinder having as its lower end an internal screw thread adapted to receive a section of casing or tubing commonly called an anchor,—being so called, as I understand it, because the lower end of the anchor rests upon the bottom of the well when the packer is in position; the upper end of the anchor being provided with a flange, on which rests a rubber *annulus* or packing cylinder, which in this Eaton packer is composed of four, five, or more rubber rings encircling the pumping tube; the lower end of the pumping tube sliding within the upper end of the anchor section or member, and provided with a projecting flange, which, when the parts are in position, rests upon the rubber in such manner that the weight of the upper section of tubing presses the upper flange upon the rubber, and thus packs the rubber against the wall of the well, and also against the pumping tube, thereby preventing water or oil from passing between the pumping tube and the wall of the well."

A flange projects from the upper end of the cylinder, which also has an inner shoulder at its upper end. The lower end of the oil tube slides within the upper end of the cylinder, and has an outwardly-projecting flange, which overlaps this inner shoulder of the cylinder. When the tube is removed from the well its shoulder engages the corresponding rim or shoulder upon the packer support, and the packer is also drawn out at the same time. This packer, or the Eaton packer, as it is commonly called, infringes the first and fifth claims of the Redmond reissued patent, if those claims are valid, and are to be literally construed. They are as follows:

"(1) The combination in an oil-well packer of a flexible packing material and a pressing device, arranged outside of the discharging tube, which presses the packing material against the wall of the well, substantially as set forth."

"(5) In combination with the discharging tube of an oil well, flexible packing material pressing against both the tube and the wall of the well, substantially as set forth."

But the description of the Redmond packer contained in the specification of the original patent shows that the invention consisted "primarily in the employment of an adjustable packing device, sliding up and down on the central elevating tube, being operated from the top of the well by wires, rods, chains, cords, or equivalent, and packing both the shaft or bore of the well and the elevating tube, so as to prevent the passage of water downward. The essential advantages attained are that the packing can be raised and lowered to adapt it to any desired position, or can be entirely removed from the well without raising the elevating tube." The patentee also says: "The packing device may be of any construction that will secure the following effects, viz., slide up and down on the central elevating tube so as to be fixed in position at any desired place without removing the tubing, and pack both the shaft and the tube." The Eaton packer was of a very different character. It had no adjustable device for raising or lowering the packer without removing the tubing. The broadest claim of the original was as follows:

" (1) A packing device for artesian wells, packing both the tubing and the sides of the well, when the device is capable either of being adjusted higher or lower upon the tubing, or *vice versa*, the tubing adjusted higher or lower within the packing, substantially as specified."

The first and fifth claims of the reissue, if construed to indicate anything more than the first claim of the original patent, are undue expansions of the original and are void.

The Eaton packer also infringes the first and second claims of the Cross reissue, if those claims are to be literally construed, and are valid. They are—

" (1) In an artesian well packer, a flexible or yielding packing material in combination with devices which press said material against both the wall of the well and the discharging tube.

" (2) In an artesian well packer, the combination with the discharging tube of a flexible or yielding packing material, and two flanges or disks which approach each other and compress the yielding packing material between them."

The specification of the original patent shows that the invention consisted of two flanges surrounding the oil tube. Two screw rods passed through both flanges, the upper flange being fixed in position by means of a collar or other device. The rods revolved freely in

this flange, and were connected with the lower one by a screw thread, which caused it to approach or recede from the upper or stationary flange. The space between the two flanges was filled with fibrous and suitable packing material. The rods extended to the top of the well, and when the point where it was desired to place the packing had been decided upon, were turned so as to draw the flanges together, and thus compress hemp or other packing material against the walls of the well. If it was desired to alter the position of the packing, the rods were turned and the pressure upon the packing thereby released. The patentee also said:

"My packing apparatus is capable of modifications without varying the principle of its construction and operation. For instance, the tube, B, may be made with a slide joint between the flanges, A, A¹, so that when the lower end of the tube touches the bottom of the well the upper portion will cause the joint to slide together, and thus compress the packing, D, in the same manner that is done in the screw rods, d, d. When the tube is raised to withdraw it, it would, of course, loosen the packing by elongating the threads or fibers, D."

Or he says that the tube could be provided with an external and internal screw of sufficient length to effect the adjustment of the packing. The first, at least, of these supposed modifications was not merely a modification of the form of the described device, but involved a new and different method of operation, and when the patent was granted it was limited to a device in which pressure was effected by screw rods or their equivalent, and not by gravity. The first claim of the original patent was for "the arrangement of artesian wells, of a fibrous material, D, consisting of hemp, or other elastic substance, in combination with the rings, A, A¹, or other suitable frame therefor, so arranged that when said rings approach each other the packing material is compressed laterally, so as to fill the space between the tube and sides of the well, and relaxed when the rings are made to recede; the same being operated from the top of the well by the screw rods, d, d, substantially in the manner and for the purpose set forth."

The Eaton packer does not infringe upon the Cross invention as originally patented, for the pressure is effected by gravity and not by screw rods, or their equivalent, and if the first and second claims of the Cross reissue should be construed to include anything more than the first claim of the original, they are void, upon the principles established in the recent decisions of the supreme court, of which *James* v. *Campbell*, 21 O. G. 337, is an example.

The defendant's packer also infringes the first claim of the Fowler and Morgan reissued patent, provided that claim is valid. It is as follows:

"In a packing for deep wells, the combination with the eduction tube of a pressing device and a hollow cylinder, made of yielding material, encircling said eduction tube, and mounted loosely between the two parts of the device which presses the cylinder against the wall of the well."

In the original patent the patentee said:

"This invention consists in a novel method of packing the tubes of oil and other wells, the packing material being applied to the tube in such a way as to become expanded and contracted by rotating the well tube about its own axis."

The device consisted of a well tube, screw threaded upon the section, which is placed in that part of the well where the packing is to be applied; a nut screwed upon the highest part of the screw thread; a washer or flange fitting loosely upon the tube next below the nut; a nut working in the same screw thread lower down on the tube, and having an upper flange, which forms part thereof; and between the flanges suitable packing, which is capable of becoming expanded by being compressed between the two flanges. The operation of the apparatus was said in the specification to be as follows: When the section which contains the packing cylinder has reached the point where the latter is to be applied, the tube is rotated.

"In the act of rotating the tube, the packing cylinder will be kept stationary by reason of the frictional contact with the sides of the well. * * * This action of the sides of the well on the cylinder, D, will cause the nut, F, to ascend the screw-thread, and thereby compress the packing cylinder, D, between the washers, and so increase its diameter."

It is obvious that the Eaton packer does not infringe upon this invention. The claim was as follows:

"Packing the tube of a well by means of a compressible packing, D, applied between the wall and the tube, said packing being compressible by the adjustment of the nut and washer, or their equivalents, on the threaded tube, substantially as described."

The first claim of the reissue is an unwarrantable enlargement of this claim, and is void.

The remaining patent to be considered is the Martin reissue, the fourth claim of which is as follows:

"In combination with the eduction tube of an artesian well, an elastic flexible packing, a rim or shoulder upon the eduction tube, and a corresponding

rim upon the packer support, whereby, when the ·eduction tube is removed from the well, the rim or shoulder shall engage with each other and withdraw the packer support, substantially as set forth."

It was conceded by the defendant's counsel, upon the oral argument, that the Eaton packer infringed this claim, and that the invention therein described was also described and shown in the specification of the original Martin patent. The counsel, not insisting upon an invalidity of this claim because it was an expansion of the claims of the original patent and the reissue had been applied for after improper delay, although intimating that such invalidity might properly be the subject of argument, rested this part of the case upon the ground that the fourth claim was for an aggregation of parts and not for a patentable combination.

Although the original Martin patent is printed in the defendant's record—a copy of it is among the papers which were left in my hands—I cannot find that it was offered in evidence. In the index to the defendant's record, although the pages where the other original patents were offered are designated, there is no mention of the place where this patent was offered, indicating that the person who made the index did not find that it was in evidence. As the original patent is not in the case, I am precluded from ascertaining whether the reissue contains new matter.

I am of opinion that each of the elements of the fourth claim co-acts with each of the other elements to produce a result which is the joint product of all the elements. The object of the rims or flanges is to pull the packer from the well when such withdrawal is necessary. Without these rims this could not be successfully accomplished. No anticipation of this claim is shown.

The infringement took place in this district, in the year 1878, while the Martin patent was owned by H. H. Doubleday, who assigned it to the plaintiff on April 4, 1879, and on June 10, 1879, also assigned to the plaintiff all his right, title, and interest in and to any claims for past infringements of said patent within and throughout the state of Connecticut. The two assignments are stated in the bill. The plaintiff, when the suit was commenced, owned the patent, and owned the entire interest in the claim for profits and damages which is here sought to be recovered, and has a right, by virtue of such ownership, to recover in this suit the profits and damages for infringements committed in this district before it owned the patent. *Dibble* v. *Augur,* 7 Blatchf, C. C. 86; *Henry* v. *Soapstone Co.* 9 O. G. 408; *Gordon* v. *Anthony,* 16 Blatchf, C. C. 234.

The regretful delay in the decision of this case was caused by my waiting for the promised brief of the defendant's counsel, which has not yet been furnished.

Let there be a decree for an injunction and an accounting as to the fourth claim of the Martin patent.