**PRIES v. UNION RY. EQUIPMENT CO. et al.**

Circuit Court of Appeals, Seventh Circuit.
December 9, 1927.

No. 3929.

1. **Patents** ☞328—1,172,904, **for railroad car brake, held invalid for lack of invention.**

Pries patent, No. 1,172,904, for improvement in railroad car brake which may be lowered, so that hand wheel and appurtenances of shaft may drop to or below level of the upper surface of the floor of the car during unloading, held invalid for lack of invention.

2. **Patents** ☞328—1,137,082, **for railroad car brake, held invalid for lack of invention as to claims 1, 2, 7, 8, and valid, but not infringed, as to claims 3, 4, 5, 6, 9.**

Pries patent, No. 1,137,082, for railroad car brake, which may be lowered so as to bring wheel of brake on level with car floor, while the car is being loaded or unloaded, held invalid for lack of invention as to claims 1, 2, 7, and 8, and valid, but not infringed, as to claims 3, 4, 5, 6, and 9.

3. **Patents** ☞129(2)—**Complaint in patent infringement suit alleging conveyance to defendant of perpetual selling rights showed mere "license" and not "assignment," estopping defendant from denying validity of patents (35 USCA § 36).**

Complaint in patent infringement suit, alleging that patentee conveyed the perpetual selling rights under his patents to one of defendants, held to show that conveyance amounted to a license only, and not an assignment of the patents, within Rev. St. § 4893 (35 USCA § 36; Comp. St. § 9437), and fact that transfer from defendant to plaintiff, who was patentee's widow, was called an assignment and that letter written by one of defendant's officials characterized conveyance from patentee

to said defendant as a "complete assignment" of the patents did not estop defendants from questioning validity of patents.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by Amelia Pries against the Union Railway Equipment Company and others. Decree for defendants, and plaintiff appeals. Affirmed.

Louis K. Gillson, of Chicago, Ill., for appellant.

Max W. Zabel, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellant, as the owner of patents Nos. 1,137,-082 and 1,172,904, each covering an improvement in a "Brake Shaft," brought this suit against appellees, who, it is charged, were wrongfully infringing both patents. The court held, however, that the contract was a license agreement which had been terminated.

to deny validity of either patent because of a written contract binding both parties. The court held, however, that the contract was a license agreement which had been terminated. [1] Patent No. 1,172,904. In the specifications the patentee said:

"The object of the present invention is to provide a construction whereby the hand wheel and all of the appurtenances of the shaft may drop to or below the level of the upper surface of the floor of the car.

"It has long been the practice in unloading gravel cars to use a plow which will travel the entire length of the train, the plow being attached to the engine by a cable, the brakes being set on all of the cars and the engine being detached from the train. This practice can be followed only when the brake mechanism is so disposed that it will not obstruct the movement of the plow."

Figure 1 of the drawings is reproduced, that the language of the specification may be better understood:

Of this drawing the patentee says:

District Court held the second patent and claims 1, 2, 7, and 8 of the first patent invalid. It held claims 3, 4, 5, 6, and 9 of this first patent valid and infringed, but not infringed by Appellees' Exhibit 7. The product represented by Exhibit 7 was the one which appellees were making at the time suit was begun. They did not contest infringement of an abandoned structure which they had made and sold in a very limited quantity. Appellant also argued that appellees were estopped

"The ratchet wheel, *17*, is recessed in its upper face, as shown at *22*, to receive the lateral offset hub portion *23*, of the hand wheel *20*. By offsetting the hub of the hand wheel, a downwardly extending recess *24* is provided for the reception of the projecting upper end of the shaft member *13*, and a nut *25* applied thereto for securing it to the hand wheel, *so that neither the rim of the wheel nor the upper end of the brake shaft will project*

*above the upper face of the car floor when the shaft is not in use."*

Claim No. 3, more or less typical of the seven claims of the patent, reads:

"In a brake shaft, in combination, a pair of telescoping shaft members, the outer member having on its upper end a ratchet wheel provided with a recess in its upper face, a pawl co-operating with the ratchet wheel, and a hand wheel attached to the upper end of the inner shaft member and having a downwardly offset recessed portion adapted to enter the recess in the ratchet wheel."

The asserted patentable novelty resides in the combination of a ratchet wheel recessed in its upper face and a hand wheel having a downwardly offset portion adapted to enter the recess of the ratchet wheel. Appellant, speaking of this patent, says: "This improvement consisted in centrally recessing the upper face of the ratchet wheel and offsetting downwardly the hub of the hand wheel to fit within this recess, the hand wheel being secured to the staff by means of a nut which did not project above the upper face of the wheel."

It would seem unnecessary to do more than state our conclusion respecting this asserted advance in the art. Countersinking is an old mechanical expedient. Its adoption in a brake shaft structure, so that neither the rim of the wheel nor the front end of the brake shaft would project above the upper face of the car floor when the shaft is not in use, does not rise to the dignity of invention. [2] Patent No. 1,137,082. The District Court held claims 1, 2, 7, and 8 to be invalid. They read as follows:

"1. In a brake shaft for railway cars, in combination, a sleeve adapted to be journaled in suitable boxes, a rod slidable in the sleeve, a hand piece carried by the rod, means for attaching a brake chain to the sleeve, and a latch pivotally carried by the sleeve for supporting the rod.

"2. In a brake shaft for railway cars, in combination, a sleeve adapted to be journaled in suitable boxes, a rod slidable in the sleeve, a hand piece carried by the rod, means for attaching a brake chain to the sleeve, a ratchet wheel carried by the sleeve, a holding pawl co-operating with the ratchet wheel, and a latch pivotally carried by the sleeve for supporting the rod."

"7. In a brake mast, an operated part and an operating part adapted to be operatively connected to said operated part, said operated part having formed therein an opening for the telescopic reception of said operating part, and means pivotally mounted within

said operated part adapted to support said operating part.

"8. In a brake mast comprising an operated part and an operating part, one of said parts having formed therein an opening for the telescopic reception of the other of said parts and means pivotally mounted within said operated part adapted to support said operating part."

These four claims are all broader than the other claims of the patent which were sustained.

In his specifications, Pries said:

"The object of the invention is to provide a drop down brake shaft, that is to say, a shaft which may be lowered from service position to bring the hand wheel down to the floor of the car.

"The invention consists of a shaft composed of sections telescopically related, one of the sections being journaled in boxes fixed to the car and constituting the shaft drum, the other section carrying the hand wheel and being slidably mounted within the drum; means being provided for locking it in the elevated or service position."

The novel element in the combination in each claim resides in a "latch pivotally carried by the sleeve for supporting the rod."

Appellees place much reliance on the Small patent, No. 234,622. Both patents deal "with a car brake which may be lowered while the car is being loaded or unloaded so as to bring the wheel of the brake on a level with the car floor or platform so that it will not be bent or broken when the freight is being handled on or off the car." Both structures make use of telescoped and collapsible shafts. Each is provided with a means (a catch or latch) to lock it in its elevated or service position. Whether Small anticipates Pries, or whether Pries' means constitute invention over Small, turns upon the differences in this element.

As before stated, Pries' means consists of a "latch pivotally carried by the sleeve." Appellees argue that Small's combination is provided with a spring attached to a shaft member and whose lower extremity may swing inwardly or outwardly thus providing a pivotally mounted extremity which is properly a pivotally mounted catch or latch. The outer extremity of this spring swings outwardly whenever the shaft section *B* is raised and thereupon prevents the shaft section *B* from falling down into its collapsed position."

Appellees say: "The function of this pivoted catch *F* of Small is exactly the same as the function of the catch *23* of the Pries

patent." The only difference is that, whereas Pries' catch is associated with what is termed the "operated part," Small's catch is associated with the "operating part" of the shaft.

Appellant takes issue with this statement of the similarity of the two structures and says: "It is true that the leaf spring was proposed by Small and a pivoted latch was employed by Pries, for supporting this sliding element; but it is not true that they perform their functions in the same way" nor is "the assertion that the location of the latch upon the operated, instead of upon the operating, part is a mere reversal" of parts.

We may the more readily reach the heart of this controversy by stating (without discussing certain propositions with the soundness of which we are satisfied) that Pries was not entitled to a claim which described means generally for supporting the sliding member of the brake staff. If there be invention at all, it resided in the *particular* means which he provided for supporting the slidable rod. A pivoted latch, it must be admitted, is not an unusual means to support and ordinarily does not bear the earmark of patentable novelty.

But we are not inclined to accept appellees' contention that Small's spring anticipates Pries' latch as described in these four claims. Nor can we say it is the mechanical equivalent of Pries' latch. But does the use of a latch so generally described as being one "pivotally carried by the sleeve" constitute such an advance over Small's spring catch as to spell invention? We think not.

Concede that a latch pivotally carried by the spring is not met by a spring catch, yet what would a mechanic do if the spring did not always work because of the dirt, the ice, and the snow that made successful operation difficult. Having before him the problem of providing means in the nature of a catch which would permit of the operation of two collapsible telescoping shafts, he would use a common mechanical device such as a latch or a catch. He would relocate the catch and mount it so that it would pivot; provided he wanted to get away from the spring.

Such a mechanical expedient would be old. The use of two collapsible, telescoping parts, one of which members is called the operated part and the other the operating part, is likewise old. Our attention is called to a patent to Schoening, No. 887,701, which covered collapsible automobile wheels. It provided "means in connection with the sections for preventing rotary movement thereof with respect to each other and a locking device for locking the sections in the adjusted position." Surely the use of a pivotal latch or a

latch so located as to pivot was the mere selection of a means well known to the mechanic.

We agree with the District Court that these claims were void for want of invention.

Respecting the other five claims (3, 4, 5, 6, and 9) of this patent, the District Court held them valid, but not infringed. They are more limited in their scope than the four claims just considered. Each combination has one element which defines particularly, or locates definitely, the latch. Claim 3 describes this element thus:

"And a latch for supporting the rod *within the sleeve* and being housed within the sleeve aperture *and held in place by the bridge piece.*"

Claim 4 describes it thus:

"And a latch for supporting the rod within the sleeve and being housed *within the sleeve aperture and having a downwardly facing shoulder engageable with the bridge piece.*"

Claim 5 describes it thus:

"An operated part, an operating part, and means pivotally and slidably mounted *within said operated part* for supporting said operating part."

Claim 6 describes it thus:

"Means pivotally and slidably mounted *within one* of said parts adapted to support the other of said parts," etc.

Claim 9 describes it thus:

"And means slidably and pivotally mounted *within said operated part* for supporting said operating part when in operative position."

Appellees' catch is not so located nor so constructed. If the claims are to be strictly construed, infringement does not appear. In view of the emphasis that must be given to the specific form of catch in order that the claim may be upheld, we cannot give its language a wide range of equivalency. We conclude, therefore, that claims 3, 4, 5, 6, and 9 are not infringed.

[3] *Estoppel.*—Contending that the appellees were once the owners of the patent, appellant denies its adversary right to question the validity of the patent. In support of this position appellant introduced a so-called assignment from appellees to appellant, also a letter, the effective portions of which read as follows:

"I note, however, you mention Mr. Pries' patents and in this connection, beg to say that Mr. Pries made a *complete assignment* of the patents which were issued prior to his death also any patents that might be issued to him in the future, to this company and in re-

turn for this he received a certain amount of stock, consequently, all of these patents, subject to shop rights held by Haskell & Barker Car Company, are controlled by our company."

The assignment from one of the appellees to appellant recited that it "sold, assigned, and transferred and does hereby sell, assign and transfer unto Amelia Pries * * * any and all rights, title, and interest, it has or may have in and to the inventions and patents enumerated below, including any and all sales, licenses, or other rights which it has or may have therein." There were some 46 patents described in this assignment including the 2 here under consideration.

Because the instrument was described as an assignment, appellant argues that appellees sold the patents in question. But the word "assignment" would apply to the sale of a license or to certain rights in and to a patent as well as to the patent. The expression "complete assignment of the patent," as used in the letter, is more descriptive; but, in view of the transaction to which the letter referred, we cannot accept appellant's construction of this letter, and say it irrevocably commits appellees to the position of having purchased the patent.

Appellant argues that because the transfer from appellee to Mrs. Pries, the widow of patentee, was called an assignment and the letter offered in evidence and written by an official of one of the appellees speaks of a *complete assignment,* the court is compelled to find that appellees were at one time the owners of the patent and later sold it to appellant.

It is unfortunate that the agreement of December, 1912, was not offered in evidence. The embarrassment under which appellees labor would be thereby avoided. However, we think the complaint and the answer establish the character of the interest the patentee conveyed. We quote from the complaint:

"Plaintiff further represents that by an arrangement entered into by and between the said Herman Pries and Union Railway Equipment Company (a corporation of South Dakota), and consummated by an instrument in writing on the 3d day of December, 1912, the said Herman Pries conveyed to the said corporation the perpetual selling rights under patents owned and controlled by him, and relating to railway devices, and including all patents on inventions relating to such devices which he might subsequently make, such conveyance being in consideration of the sum of fifty thousand dollars ($50,-000), to be paid in a like amount of the preferred and common stock of said corporation, which stock was in due time issued to and held by him; and such conveyance was recognized by both parties thereto as including the right of manufacture, which right was exercised by the said Union Railway Equipment Company (a corporation of South Dakota) thereafter."

The learned District Judge we think properly described the relationship of the parties when he said:

"It is perfectly obvious that the transfer by Herman Pries to the Union Railway Equipment Company of the perpetual selling rights, and adding to that what is averred in the answer, the right to manufacture (something which is not in the document itself) amounted to a license only, and did not constitute an assignment of the patents within the meaning of the patent law. It is only necessary to refer in that connection to the leading case of Waterman v. Mackenzie, 138 U. S. 252 [11 S. Ct. 334, 34 L. Ed. 923]. * * * The case states the tests to be applied in determining whether a document is an assignment or a license and whether the transferee is entitled to sue for infringement, or the suit must be brought by the original patentee. Again, in Crown Company v. Nye Tool & Machine Works, 261 U. S. 24 [43 S. Ct. 254, 67 L. Ed. 516], there is a review of the cases. * * *

"Starting out with the proposition that this basic document in the case is not an assignment within the meaning of the Patent Law, but is a license, then this paper of the 10th of June, 1919, in which the plaintiff here is named as the assignee, was in effect a surrender of a license. It must be borne in mind that this transferee in the paper of the 10th of June, 1919, is the one who had acquired the legal title to the patent as devisee under the will of Herman Pries. In this paper of the 10th of June, 1919, the company did not undertake to transfer to Amelia Pries more than it had received by the transfer from Herman. There is no claim that the company had any interest of any kind in these patents except that which had been received by the transfer from Herman Pries. The writing, then, though it is designated as an assignment, is not an assignment of an interest in a patent within the meaning of section 4893 of the Revised Statutes [35 USCA § 36; Comp. St. § 9437]."

The relationship between these parties having been that of a licensor and licensee which relationship terminated prior to the alleged infringement, appellees are not estopped to attack the validity of the patent.

The decree is affirmed.