## HOLLAND FURNACE CO. v. W. H. KRATZER CO.
### No. 1840.

District Court, E. D. Michigan, S. D.
Jan. 3, 1931.

Fred L. Chappell and Chappell & Earl, all of Kalamazoo, Mich., for plaintiff.

Murray & Zugelter, of Cincinnati, Ohio, for defendant.

SIMONS, District Judge.

This is a suit for infringement of two patents, Russell 1,589,986, covering a method of cleaning furnaces, and Russell 1,589,987, covering a process for cleaning furnace casings. The issue in respect to each patent is its validity in the face of alleged anticipation and prior public use. If the patents are valid, claim 3 of the first patent in suit, and both of the claims of the second patent, are clearly infringed.

The first patent in suit describes a furnace cleaning method in which there is used a gasoline engine of 22 H. P. mounted upon a truck, a fan to create suction, a suction pipe, and a dust bag to collect the dust drawn off from the furnace. The specific method of cleaning as recited in claim 3 of this patent is a method of cleaning furnace and chimney "by providing an exhaust connection to a door of the said furnace, closing all openings to the said furnace, and opening the smoke pipe damper for free passage of air down the chimney to the said furnace body and out at the exhaust connection, and creating a suc-tion in the said exhaust connection that rapidly displaces the air from the said furnace body, creating a considerable degree of vacuum and causing a full flow of air down said chimney and flue and through the said furnace and its passages." The method of cleaning the furnace casing described in the second patent in suit makes use of the same organization of engine, fan, pipe, and dust bag, and provides for the exhaust connection to the casing during the cleaning operation and the drawing of a strong current of air through various warm air and cold air pipes one at a time, and the closing of all of the pipes and opening them one at a time successively to insure the débris being carried away by the strong flow of air created by the exhaust.

Various prior art patents issued in this country, and some abroad, are cited in anticipation. They were not seriously urged at the trial, and none of them are discussed in the defendant's brief. Their pertinency to the issue of validity involved is doubtful, and no consideration will be here given to them. The principal challenge to validity is the public use of the so-called Cox machine first built and used prior to 1923, and employed during five seasons on approximately a thousand jobs in Ohio. Witnesses described the operation of the Cox method, and it was demonstrated in Detroit for the court. Cox used a gasoline engine of horse power equivalent to that described in the first patent in suit, a fan, a dust collecting receptacle, and a suction pipe. The Cox method, whether applied to the furnace or the furnace casing, drew off all of the loose dirt and dust, but did not create a sufficiently strong current of air to draw off the dust and dirt that adhered to the furnace walls, or the walls of the casing and flues. To loosen such adhering dirt, Cox used an auxiliary compressed air jet which was manipulated in and about the furnace, its casing and flues, to loosen up such adhering dirt in order that it might be drawn off by the suction pipe. Cox made an application for a patent, but the proceedings were eventually abandoned and the manufacture and use of the Cox machine practically ceased before the industry based upon the patents in suit began to develop.

During the trial of the case and the examination of plaintiff's expert, Parks, it was made clear that though the patent described the use of a 22 H. P. Ford automobile engine, the plaintiff's commercial process employed a more powerful engine and probably

a larger fan. It occurred to the court that possibly the difference between the Cox method and the plaintiff's method might be one simply of degree. Thereupon the following colloquy took place between the court and Mr. Parks:

"Q. Well, if you were taught or told by the patent to use a 22 H. P. engine along with the other elements disclosed and then you found from practical experience that a 22 H. P. engine wouldn't do the work, naturally you would think of substituting a more powerful engine, wouldn't you? A. Yes.

"Q. Now in the observations that you made of the Cox machine you found that soot and dirt was removed by suction, some of it? A. Yes.

"Q. I suppose some of it is loose and some of it adheres to the sides of the furnace pipes? A. To the different pipes and casings, yes, sir.

"Q. And when that adheres the problem is to present enough suction to dislodge it, isn't that the proposition? A. Yes. In other words the theory of cleaning of course is to move a jet of high velocity air over the surface to be cleaned. Now if it is not done by the suction fan—

"Q. Is there any other problem involved after once having the principle of sending an air passage through, which is actuated by suction induced by an engine and fan, is there any other problem, then, except to increase the power that is applied at the beginning and the size and velocity of the fan? A. That is the only problem, to increase the size of the fan and the power required to drive it until you are moving sufficient air to give you the necessary velocity.

"Q. That, of course, may necessitate some change in the size of the surface walls of the pipe? A. Yes, it may necessitate variation of the size of the pipe connecting the fan to the furnace in order to be able to handle the necessary air."

To meet this apparent concession on the part of the expert that the difference between the Cox method and that of the plaintiff is one of degree, the plaintiff relies upon the case of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523, and other cases in which the decision of the Supreme Court in the Eibel Case is followed. Properly understood, the Eibel Case is not authority for the proposition that a mere change in form, proportions, or degree for doing the same thing in the same way by substantially the same means with better results is such invention as will sustain a patent. In the paper making art in which the Fourdrinier machine was employed, Eibel found that continued high speed in the wire resulted in defective paper. He concluded that this was due to the disturbance and ripples in the stock as it was forming at a point between the breast roll and the first suction box, caused by the fact that at that point the wire was traveling much faster than the stock, and if at that point the speed of the flowing stock could be increased approximately to the speed of the wire, the disturbance and rippling in the stock would cease, and defects would disappear from the paper product. He proposed to add to the former speed of the stock by substantially tilting the wire and giving the stock the added force of the downhill flow. The lower court thought that the tilting of the wire was a mere change in degree, and was not patentable. Mr. Chief Justice Taft pointed out the inventive concept of the Eibel process, at page 68 of 261 U. S., 43 S. Ct. 322, 330, 67 L. Ed. 523, in the following language:

"The invention was not the mere use of a high or substantial pitch to remedy a known source of trouble. It was the discovery of the source not before known, and the application of the remedy, for which Eibel was entitled to be rewarded in his patent. Had the trouble which Eibel sought to remedy been the well-known difficulty of too great wetness or dryness of the web at the dandy roll, and had he found that a higher rather than a lower pitch would do that work better, a patent for this improvement might well have been attacked on the ground that he was seeking monopoly for a mere matter of degree. But that is not this case. On the other hand, if all knew that the source of the trouble Eibel was seeking to remedy was where he found it to be, and also knew that increased speed of the stock would remedy it, doubtless it would not have been invention on his part to use the pitch of the wire to increase the speed of the stock, when such pitch had been used before to do the same thing, although for a different purpose and in less degree."

It appears clear, therefore, to me that Eibel discovered what was not then obvious to those working in the paper making trade. While the means used were perhaps obvious once the difficulty was ascertained and the remedy seen, yet Eibel was an inventor. In this case to accept the enlightened judgment of the plaintiff's expert, the failure of Cox

was obvious, and the means to cure it were equally obvious. There is therefore no invention. As the Chief Justice said in the Eibel Case, "The issue is one largely of evidence."

It is true, of course, that the industry founded by Cox never reached substantial development and subsequently died, while upon the plaintiff's method there has developed a large and substantial business. This is important, but not conclusive, and how much of the plaintiff's success is due to its own previous reputation in the furnace business and its large organization and capital, rather than to the novelty of the invention, is not clear. It is also true that Cox did not know how to make his method more practical, and that he was wrong in his computation of the air velocity at the intake of the suction pipe. This is likewise important, but likewise not conclusive. I am of the opinion that what Russell did over Cox involved merely a change in degree, and the patent is invalid because of anticipation by prior public use of the Cox method.

The bill will be dismissed, with costs to the defendant.