CROWN DIE & TOOL COMPANY *v.* NYE TOOL & MACHINE WORKS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 240. Argued January 17, 18, 1923.—Decided February 19, 1923.

1. A suit based on an alleged assignment of a patent right, involving the validity of the assignment under the patent laws, is within the jurisdiction of the District Court as a suit arising under those laws. P. 33.

2. The mere right to exclude others from making, using or vending a patented invention is not such an interest as may be assigned under the patent laws, and an attempted transfer thereof as against a particular person with right to enjoin his future infringements and collect damages therefor, is void. Pp. 35, 39.

3. An assignment by a patent-owner, not conveying any interest in the patent itself but only a claim for past damages against infringers, does not confer upon the assignee a right to sue for such damages in his own name without joining his assignor, who must also have been the owner of the patent when the infringements were committed. P. 39.

4. The effect of such an assignment depends upon the patent law, unaffected by Equity Rule 37 providing that suits shall be prosecuted in the name of the real party in interest. P. 44.

276 Fed. 376, reversed.

This was a bill in equity filed in the United States District Court for the Northern District of Illinois by the Nye Tool and Machine Works, a corporation of Illinois, having its place of business in Chicago, against the Crown Die

and Tool Company, a corporation of the same State and doing business in the same city. The plaintiff sought to enjoin the infringement of a patent for a machine for forming screw thread-cutting devices, and for an accounting of profits and for damages. The inventors were Wright and Hubbard, and the patent issued to their assignee, the Reed Manufacturing Company of Pennsylvania.

The plaintiff based its right to sue on the following instrument which it terms an assignment:

### EXHIBIT A.

Whereas, Reed Manufacturing Company, a corporation of Pennsylvania, is the owner of Letters Patent of the United States, No. 1,033,142, for a Machine for Forming Screw-Thread Cutting Devices, granted July 23, 1912, on an application of Wright and Hubbard; and

Whereas, under said patent said Reed Manufacturing Company has the right to exclude others from manufacturing, using and selling the devices of said patent; and

Whereas, it is believed by the parties that Crown Die & Tool Company, a corporation of Illinois, has been manufacturing and using devices in infringement of said patent; and

Whereas, Nye Tool & Machine Works is engaged in the manufacture of dies with which the dies made by said Crown Die & Tool Company, by the use of said infringing machine, are in competition; and

Whereas, Nye Tool & Machine Works is desirous of acquiring from Reed Manufacturing Company all of its rights of exclusion under said patent, so far as the same may be exercised against the Crown Die & Tool Company, together with all rights of the Reed Manufacturing Company against the Crown Die & Tool Company arising out of the infringement aforesaid:

Now, Therefore, in consideration of one thousand dollars ($1,000.00), and other good and valuable considerations, the receipt of which is hereby acknowledged, the Reed Manufacturing Company hereby assigns and sets over to the Nye Tool & Machine Works all claims recoverable in law or in equity, whether for damages, profits, savings, or any other kind or description, which the Reed Manufacturing Company has against the Crown Die & Tool Company arising out of the infringement by the Crown Die & Tool Company of the Wright & Hubbard patent No. 1,033,142; and, for the same consideration, assigns and sets over all the rights which it now has arising from said patent of excluding the Crown Die & Tool Company from the practice of the invention of said patent, the intention being that, in so far as concerns the exclusion of the Crown Die & Tool Company under said patent, the Nye Tool & Machine Works shall be vested with as full rights in the premises as the Reed Manufacturing Company would have had had this assignment not been made; and that the Nye Tool & Machine Works shall have the full right to bring suit on said patent, either at law or in equity against said Crown Die & Tool Company, and for its own benefit, to exclude the Crown Die & Tool Company from practicing the invention of said patent, and for its own use and benefit to collect damages which may arise by reason of the future infringement of said patent by the Crown Die & Tool Company, but nothing herein contained shall in any way affect or alter the rights of the Reed Manufacturing Company against other than the Crown Die & Tool Company; and, for the same consideration, all rights as are herein given against the Crown Tool & Die Company are given as against any successor or assignee of the business thereof.

REED MANUFACTURING COMPANY,
By P. D. Wright,
*Its President.*

The defendant moved to dismiss the bill as follows:

Now comes the defendant, Crown Die and Tool Company, by its solicitor, and moves the Court to dismiss the Bill of Complaint instituted in the above entitled cause upon grounds and reasons therefor as follows—

1. That the Bill of Complaint states an alleged cause of action arising out of the assumed infringement of a patent in which plaintiff has no title, and prays an injunction, and accounting and damages.

2. That the owner of the entire or any part of the legal title to the patent sued on is not made a party to the suit.

3. That the legal effect of the alleged assignment set up as the basis of this cause of action and forming part of the Bill of Complaint herein is contrary to the statutes covering suits for infringement of patents, and shows on its face that the plaintiff has no interest in the patent sued on.

4. That the Bill of Complaint herein, including the alleged assignment, evidences a conspiracy against this defendant by the parties to the document identified as " Exhibit A," in which the plaintiff and the Reed Mfg. Company assumed the function of the Court in having already decreed that this defendant infringes Patent No. 1,033,142, and now seeks to utilize this Court to annoy and harass the Crown Die and Tool Company by instituting legal proceedings when no right of action exists.

5. That " Exhibit A " attached to the Bill of Complaint in this case purports only to convey to plaintiff all claims recoverable in law or in equity which the Reed Mfg. Co. may have against the Crown Die and Tool Co., over which subject matter this Court has no jurisdiction.

6. Prior suit pending, between the same parties in this Court, decision of which will determine any questions involved in this case.

Therefore this defendant respectfully moves the Court to dismiss said Bill of Complaint with its reasonable costs and charges in its behalf most wrongfully sustained.

CROWN DIE & TOOL CO.,

By FLORENCE KING,

*Solicitor for Defendant.*

The District Judge in the interest of expedition granted the motion to dismiss in order that the main question, i. e., the plaintiff's right to sue, might be determined by the Circuit Court of Appeals before the expense of an accounting should be incurred, although he thought the plaintiff had acquired the right under the instrument. 270 Fed. 587. The Circuit Court of Appeals reversed the decree of dismissal, holding the instrument to be a valid assignment of an interest in the patent conferring the right to sue and remanded the cause to the District Court for an accounting and further proceedings. 276 Fed. 376.

Although the decree of the Circuit Court of Appeals is not final, the importance of the question involved and the possible saving of useless litigation led this Court to grant the writ of certiorari before further proceedings in the District Court.

*Florence King* for petitioner.

*Mr. Russell Wiles,* with whom *Mr. W. H. Dyrenforth* and *Mr. George A. Chritton* were on the brief, for respondent.

The entry of decrees, professedly contrary to the judicial judgment of the Chancellor and for the sole purpose of permitting an appeal not otherwise authorized, is entirely subversive of the statutes relative to appeals and is open to even more severe criticism than that of entering *pro forma* decrees. *Ex parte Harley-Davidson Motor Co.,* 259 U. S. 414.

All that a patentee can acquire from the Government is the right to exclude others. *Bloomer* v. *McQuewan,* 14

How. 539, 548; *Patterson* v. *Kentucky,* 97 U. S. 501; *Fuller* v. *Berger,* 120 Fed. 274; *Continental Paper Bag Co.* v. *Eastern Paper Bag Co.,* 210 U. S. 405. It would seem to follow that an assignee could buy nothing more, and should be required to buy nothing more, in order to maintain a suit. Only recently, in *United Shoe Machinery Corp.* v. *United States,* 258 U. S. 451, this Court reasserted the proposition that the patent grant is nothing but the right to exclude.

The suggestion that the natural right to make, use and vend, or some part of it, and the right to exclude must coexist in the plaintiff before suit can be brought, is clearly unsound both on principle and precedent. In *Patterson* v. *Kentucky, supra,* the natural right was extinguished by the state law while the patentee was recognized as being vested with the patent monopoly which it remained the duty of the courts to preserve and protect. Today there are hundreds, if not thousands, of existing patents upon processes for the manufacture of alcoholic liquors. The natural right of each patentee has been extinguished by the Eighteenth Amendment and the statutes enacted thereunder, yet it is manifest that each patentee could maintain suit against an infringer and would in no sense be deprived of his patent rights because the infringer is a law breaker.

A common case of the complete separation of the natural right from the right to exclude is that created when a patentee grants to some one else the exclusive right to make, use and sell with such limitations as to leave the legal title in the patentee. In such a case (under the old rules) the licensee might sue in the name of the licensor to protect his own interest, but the licensor could sue alone to recover his damages. He may have a substantial interest in the recovery and in excluding unlicensed manufacture because infringing competition with the licensee cuts down the licensor's royalties. His rights as a liti-

gant are clearly sustained in *Kaiser* v. *General Phonograph Supply Co.,* 171 Fed. 432, in 'which case, however, the licensee was also a party.

It is equally apparent that the grantee of a territorial interest may sue for infringement committed within his territory, even though for other reasons, physical or legal, it is impossible for him to exercise his natural right.

The most common case of the separation of the patent and natural rights is where the structure of the patent in suit is dominated by some other and broader patent. The broader patent may be older or younger or of the same date with the narrower patent. In either case, for the whole life of the broader patent, and this may be the whole life of the narrower patent as well, the patentee of the narrower patent has no natural right to make, use or sell the structure of his own patent. Any suggestion that the plaintiff in a patent suit must have the natural right to make, use and sell in addition to the patent right would create an entirely new defense to patent cases, would make it impossible for the owner of the narrower patent to sue with a broad patent in force, and would immensely complicate patent litigation.

The exclusive right and the natural right flow from different sources, are of different kinds and need not co-exist. It is impossible to maintain any clean-cut line of patent law unless we totally divorce the two rights, and, in discussing the patent right, assume that the natural right is immaterial. It may be non-existent or suspended; exercised, not exercised, or even misused, and the status of the plaintiff will be the same.

This would seem to be necessary on principle, since the patentee who gets from the Government only the right to exclude would be in a sad position were his franchise to be extinguished with changing conditions affecting a natural right concerning which the Federal Government is entirely uninterested and over which it has no control.

The natural right, in the main, is a creature of state laws and it must be disregarded from every aspect in considering the franchise granted by the Federal Government.

Having thus established the nature of the franchise granted by the patent, it would seem that under §. 4898, Rev. Stats., providing that any patent or any interest therein shall be assignable in law by an instrument in writing, the patentee would have a right to split his right to exclusion along any lines he chooses.

The Reed Manufacturing Company had the right to exclude the Crown Company and the right to collect past and future damages and profits. It certainly had the right to sell its claim for past damages. Why it should not sell the right to future damages, if any, we do not see. In a case of a continuing trespass the owner of the chose theoretically ought to be able to sell not only his past but his future claims. But what has become of the Reed Company's right to exclude defendant? It has not been extinguished and it rests either with the Reed Company or with the plaintiff. The Reed Company has tried to sell it, has taken good money for it, and is in no position as between the parties ever to assert that it owns this right. If it has carried out its purpose, then the plaintiff has all the title necessary to maintain this suit. If not, a *bona fide* sale of a valuable right is to be prohibited at the instance of a wrongdoer totally unaffected by it and contrary to the desires of both the parties interested.

This matter does not concern either the public or the defendant because, whoever owns the patent, defendant has no right to infringe and at some time (to some one) should account.

The general rule, of course, is that all choses are assignable which would not abate at death but would fall to the estate. Expectancies even are assignable in equity, and certainly there is such expectation that an infringer will continue as to justify an assignment of future damages.

The suggestion that assignments like this would lead to a multiplicity of suits is without weight. There can never be more suits on a patent than there are infringers.

A judgment in this suit for the defendant would be *res judicata.*

The outstanding requirement of public policy is that infringement shall not exist and that infringers shall not keep their profits. Public policy is not affected by nice questions of title.

The true distinction between licenses and interests in a patent is this: The patent grants a threefold right to exclude from manufacture, from use, and from sale. All instruments which have conveyed the threefold right in the whole invention have been held transfers of an interest, while those conveying only one or two of these rights, or all of them in only some species of the patented invention, have been held licenses. Fundamentally, we believe the effort has been to prevent the possibility of two suits on the same patent against a single infringer, one by the owner of a part of the power of exclusion, and the other by the owner of the remainder. This distinction runs through all the cases.

This and other courts have repeatedly stated, *arguendo,* that there are only three kinds of assignments of interests, i. e., assignments of the entire interest, assignments of an undivided interest, and assignments of a territorial interest, and that everything else is a license. The assertion, however, that there are only three kinds of assignments is *dictum,* for the real question before the court in each case is whether a particular instrument was a license and in every case the license lacked what is here present, a complete conveyance to the plaintiff of every right under the patent which was or could be litigated in any suit by a particular defendant.

The situation is clearly one where a suit by the Reed Company for the use of the plaintiff would lie under the

old Equity Rules. The new rules abolish such suits and permit the beneficial owner to sue in its own name. It would, therefore, seem to follow that if the assignment is only a declaration of trust, and is totally ineffective as a legal transfer, nevertheless plaintiff may maintain its case.

It is especially to be noted that from time immemorial equity has protected the sale of choses in action even when their validity was seriously questioned on the law side.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

The petitioner raises a question of jurisdiction. It says that the suit does not arise under the patent laws of the United States, but is merely a suit on a contract like one for royalties under a license of which the District Court could not have jurisdiction because the parties are both citizens of the same State. To sustain this argument are cited *Albright* v. *Teas,* 106 U. S. 613; *Pratt* v. *Paris Gas Light Co.,* 168 U. S. 255, and *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.,* 185 U. S. 282. The cases have no application and the point is without merit. The bill in this case is based on an assignment of a patent claimed to be valid under the statutes of the United States, and asking the protection of the patent right thus assigned by injunction and an accounting. It, therefore, involves the validity of the assignment of a patent, which is a question arising under the patent laws because it depends upon their construction, and if the assignment is valid, the suit is just an ordinary suit for injunction and profits dependent on the validity of the patent and its infringement under those same laws. There is no question of royalties by contract in the case.

The main question is an interesting one. The argument of counsel for the respondent and the one upon which the Circuit Court of Appeals proceeded to its con-

clusion is that the right which the patentee derives from the Government by its grant is not the right to make, use and vend; that such a right is a so-called natural right not dependent on statute but arises under the common law and has no peculiar federal source or protection other than any other right of liberty or property. All that the Government grants and protects is the power to exclude others from making, using, or vending during the grant of seventeen years. Under the patent law, § 4898 Rev. Stats., a patentee may assign by an instrument in writing his patent or any interest therein. It is argued that as the patent is only the power to exclude all from making, using and vending, the power to exclude some particular person from doing so is a part of that power of exactly the same nature, and therefore is a definite interest in the patent that can be assigned.

The analysis of the rights which a patentee acquires under the grant is sustained by a line of authorities. *Bloomer* v. *McQuewan,* 14 How. 539, 548; *Patterson* v. *Kentucky,* 97 U. S. 501; *United States* v. *American Bell Telephone Co.,* 167 U. S. 224, 249; *Bement* v. *National Harrow Co.,* 186 U. S. 70, 90; *Continental Paper Bag Co.* v. *Eastern Paper Bag Co.,* 210 U. S. 405; *Heaton-Peninsular Co.* v. *Eureka Specialty Co.,* 77 Fed. 288, 294; *Fuller* v. *Berger,* 120 Fed. 274. The fullest and most satisfactory discussion of the subject is found in *Continental Paper Bag Co.* v. *Eastern Paper Bag Co., supra.* In that case it was sought to defeat a suit by a patent-owner for infringement of a patent on the ground that he was not entitled to ask a court of equity to aid him in protecting the grant of the patent to him by the Government, because he had failed and neglected ever to use the patent himself or to allow anybody else to do so and therefore had not rendered to the public the benefit and consideration for which the patent was granted. This Court held that the benefit which the Government intended to secure was not the

making or use of the patent for the benefit of the public during the seventeen years of the grant except as the patentee might voluntarily confer it from motives of gain, but only the benefit of its public use after the grant expired. The Court held that the Government did not confer on the patentee the right himself to make, use or vend his own invention, that such right was a right under the common law not arising under the federal patent laws and not within the grant of power to Congress to enact such laws, and that in the absence of the express statutory imposition upon the patentee of the obligation to make, use or vend his patented invention as a condition of receiving his patent, it would not be implied. The Court further held that in its essence all that the Government conferred by the patent was the right to exclude others from making, using or vending his invention.

We do not think, however, that these clearly established principles sustain the next step in the reasoning of the counsel for the respondent and the Circuit Court of Appeals, which is that they make the mere right to exclude persons from the making, using and vending of an invention such an interest in a patent that it can be assigned. It ignores the indispensable condition of the granting and establishment of a patent right and patent property that the patentee shall have himself the common law right of making, using and vending the invention. The sole reason and purpose of the constitutional grant to Congress to enact patent laws is to promote the progress of science and useful arts by securing for limited times to inventors the exclusive right to their respective discoveries. Article I, § 8, clause 8. In pursuance thereof, § 4886, Rev. Stats., as amended, 29 Stat. 692, provides that any person who has invented or discovered any new and useful art, machine, manufacture or composition of matter or any new or useful improvements thereof, upon certain conditions not important here, may obtain a pat-

ent therefor. Section 4884, Rev. Stats., directs that the grant of a patent shall be to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States. An inventor may in writing assign his invention and the right to a patent before the patent is granted, and under § 4895, Rev. Stats., a patent will issue to the assignee. Can it be claimed that an assignment of the right to exclude all from making, using and vending and excepting therefrom the right to make, use and vend in the assignee, would be such an assignment as would justify the Patent Office in issuing the patent under the statute to the assignee? Yet if all that there is in a patent property is the bare right to exclude others from making, using or vending some thing, the patent should issue in such a case.

The error in the position of the respondent and the court below is in a failure to distinguish between the property or title or interest in a patent capable of assignment and the chief incident of that property, title or interest, an incident which can only pass by assignment when attached to the right to make, use and vend. It is the fact that the patentee has invented or discovered something useful and thus has the common law right to make, use and vend it himself which induces the Government to clothe him with power to exclude everyone else from making, using or vending it. In other words, the patent confers on such common law right the incident of exclusive enjoyment and it is the common law right with this incident which a patentee or an assignee must have. That is the implication of the descriptive words of the grant " the exclusive right to make, use and vend the invention." The Government is not granting the common law right to make, use and vend, but it is granting the incident of exclusive ownership of that common law right, which can not be enjoyed save with the common law right.

A patent confers a monopoly. So this Court has decided in the *Paper Bag Case, supra,* and in many other cases. The idea of monopoly held by one in making, using and vending connotes the right in him to do that thing from which he excludes others.

Dealing with the question of patent assignments under the laws of the United States, Mr. Justice Gray, in *Waterman* v. *Mackenzie,* 138 U. S. 252, 255, said:

"The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States, Rev. Stat. § 4898. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. Rev. Stat. § 4919; *Gayler* v. *Wilder,* 10 How. 477, 494, 495; *Moore* v. *Marsh,* 7 Wall. 515."

The learned Justice then proceeds (page 256) to give examples of what would and would not constitute an assignment. A grant of an exclusive right to make, use and vend two patented machines within a certain district, he points out, citing *Wilson* v. *Rousseau,* 4 How. 646, 686, is an assignment because the right, although limited to making, using and vending two machines, excludes all other persons, even the patentee, from making, using or

vending like machines within the district. "On the other hand", he says, "the grant of an exclusive right under the patent within a certain district, which does not include the right to make, and the right to use, and the right to sell, is not a grant of a title in the whole patent right within the district, and is therefore only a license."

In *Gayler* v. *Wilder*, 10 How. 477, it was held that the grant of an exclusive right to make and vend an article within a certain territory upon paying to the assignor a cent per pound, reserving to the assignor the right to use and manufacture the article by paying the assignee a cent per pound, was only a license and that a suit for the infringement of the patent right must be brought in the name of the assignor. The effect of the opinion in that case is that the monopoly granted the patentee is for one entire thing and in order to enable an assignee to sue he must have received the entire and unqualified monopoly in the territory specified. Chief Justice Taney's reason for this (p. 494) is useful in this case. "For", said he, "it was obviously not the intention of the legislature to permit several monopolies to be made out of one, and divided among different persons within the same limits. Such a division would inevitably lead to fraudulent impositions upon persons who desired to purchase the use of the improvement, and would subject a party who, under a mistake as to his rights, used the invention without authority, to be harassed by a multiplicity of suits instead of one, and to successive recoveries of damages by different persons holding different portions of the patent right in the same place." See also *Pope Manufacturing Co.* v. *Gormully & Jeffery Manufacturing Co.*, 144 U. S. 238, 250.

These cases do not present the same facts as the one before us; but they indicate clearly what view the courts deciding them would have taken of an effort like that in the case at bar to divide up the monopoly of patent prop-

erty so that the patentee retains the right to make, use and vend, but gives to many different individuals the right to sue certain named infringers, respectively, and that with the sole motive of harassing them such as is avowed in the recitals of the instrument before us. If held legal, it would give the patentee an opportunity without expense to himself to stir up litigation by third persons that is certainly contrary to the purpose and spirit of the statutory provisions for the assigning of patents.

Nor do we think that the principle of *Patterson* v. *Kentucky,* 97 U. S. 501, or the instance of a patent for an improvement on a machine, patent for which is held by another, involves anything inconsistent with our conclusion that the right to exclude others conferred in a patent can only be conferred upon one who has the common law right to use, make and vend. In *Patterson* v. *Kentucky,* the patentee had the common law right to make, use and vend, but the State of Kentucky exercising her lawful police power restricted him in it. In the case of the patentee for improvement on a patented machine, the patentee has the right to make, use and vend the improvement, but he cannot make it profitable or useful unless he can secure the right to put it on to another machine.

For the reasons given, we think the attempted assignment in this case carried no part of the title to the patent or interest in it and therefore conferred no right to sue for damages for infringement of the patent after the execution of the instrument.

The remaining question is whether the instrument relied on by the plaintiff below gave it the right to sue in its own name in this case for damages for past infringements. We think not.

The plaintiff below could not bring such a suit for past infringements without joining with it the owner of the

patent when the infringements were committed. It is said that the claim of an owner of a patent for damages for infringements is only a chose in action which in modern days may be so assigned that the assignee acquires full title and the right to sue at law as well as in equity without joining his assignor. This view ignores the peculiar character of patent property and the recognized rules for the transfer of its ownership and its incidents. Patent property is the creature of statute law and its incidents are equally so and depend upon the construction to be given to the statutes creating it and them, in view of the policy of Congress in their enactment. This is shown by the opinion of this Court in *Waterman* v. *Mackenzie,* 138 U. S. 252, already cited, and in the line of authorities followed therein. It is not safe, therefore, in dealing with a transfer of rights under the patent law, to follow implicitly the rules governing a transfer of rights in a chose in action at common law. As Chief Justice Taney said in *Gayler* v. *Wilder,* 10 How. 477, 494:

" The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law. It is created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes."

The law as to who should bring a suit at law for damages by infringement of a patent is clearly and correctly stated in III Robinson on Patents, § 937, as follows:

" With a single exception the plaintiff in an action at law must be the person or persons in whom the legal title to the patent resided at the time of the infringement. An infringement is an invasion of the monopoly created by the patent, and the law which defines and authorizes this monopoly confers only upon its legal owners the right to institute proceedings for its violation. These owners are the patentee, his assignee, his grantee, or his

personal representatives; and none but these are able to maintain an action for infringement in a court of law. Moreover, the injury inflicted by an act of infringement falls upon the individual who owns the monopoly at the date of the infringement. It does not affect former owners whose interest had terminated before the infringement was committed, nor does it so directly prejudice a future owner that the law can recognize his loss and give him a pecuniary redress. Hence the plaintiff must not only have a legal title to the patent, but must have also been its owner at the time of the infringement. The exception above referred to arises where an assignment of a patent is coupled with an assignment of a right of action for past infringements. In this case the present owner of the monopoly may institute proceedings for its violation during the ownership of his assignor as well as for infringements committed since the transfer of the title to himself."

In *Moore* v. *Marsh,* 7 Wall. 515, the question was whether a sale and assignment by a patentee of his patent right was, under the fourteenth section of the Patent Act of 1836, c. 357, 5 Stat. 117, 123, now embodied in § 4919 of the Revised Statutes, a bar to an action by him to recover damages for an infringement committed before such sale and transfer. The section provided:

"And such damages may be recovered by action on the case, in any court of competent jurisdiction, to be brought in the name or names of the person or persons interested, whether as patentees, assignees, or as grantees of the exclusive right within and throughout a specified part of the United States."

The neat issue in that case was whether " the name or names of the person or persons interested " meant the person interested when the infringement took place or when the suit was brought. The Court held that it meant the person who was patentee, assignee, or grantee when

the infringement occurred and the cause of action accrued. The Court held, therefore, that the proper plaintiff in a suit for past infringements was not the present owner of the patent, and that he did not acquire the right to bring suits for prior infringements merely by the conveyance of the full title to the patent and its enjoyment. This case was followed by that of *Gordon* v. *Anthony,* on the Circuit, reported in 16 Blatchf. 234; s. c. 10 Fed. Cas. 773, No. 5,605. The decision was by Blatchford, Circuit Judge of the Second Circuit, who had been district judge and who subsequently became a Justice of this Court and had great experience in the administration of the patent law.

The question before him was whether the vendee and assignee of a receiver appointed by a state court of New York in proceedings supplementary to execution on a judgment against a debtor whose assets included a patent right and who was directed by the court to convey the same to the receiver but did not do so, could sue for damages for infringement of the patent occurring before the receivership. After saying that under the law of 1836 and under the Revised Statutes in which the sections of that law were embodied, no one could bring a suit either at law or in equity for infringement of a patent in his own name alone unless he were patentee, assignee, or grantee, the Judge continues:

"A claim to recover profits or damages for past infringement can not be severed from the title by assignment or grant, so as to give a right of action for such claim, in disregard of the statute. The profits or damages for infringement cannot be sued for except on the basis of title as patentee, or as such assignee or grantee, to the whole or a part of the patent, and not on the basis merely of the assignment of a right to a claim for profits and damages, severed from such title. Therefore, if, in the present case, no such assignment or grant has been made to the de-

fendants as the statute contemplates, they could not bring suit, in their own names, under the assignment made to them, to recover any claims, profits or damages for infringement, which belonged to Gordon, [i. e., the patentee], nor can they use the assignment as a defence against any such claims existing against themselves in favor of Gordon. In this case there has been no assignment executed by Gordon."

See also *Ball* v. *Coker,* 168 Fed. 304, 307. Counsel for plaintiff cites *Hayward* v. *Andrews,* 12 Fed. 786, to maintain the contrary and to sustain the right of the assignee of claims for past infringements to maintain suit. The case cited is not in point, the assignee in that case held the legal title to the patent.

The sole exception to the rule that only he who is the owner of the patent at the time of the infringement can sue for damages, to which Professor Robinson refers, is when such owner assigns the patent and also the claim for past infringements to the same person. In such a case, as the title and ownership of the claims are united, it is held that the owner may sue. *Dibble* v. *Augur,* 7 Blatchf. 86; 7 Fed. Cas. 642, No. 3,879; *Hamilton* v. *Rollins,* 5 Dill. 495; 11 Fed. Cas. 364, No. 5,988; *Henry* v. *Francestown Soap-Stone Stove Co.,* 2 Ban. & A. 221; 11 Fed. Cas. 1,180, No. 6,382; *Consolidated Oil Well Packer Co.* v. *Eaton, Cole & Burnham Co.,* 12 Fed. 865, 870; *Spring* v. *Domestic Sewing-Machine Co.,* 13 Fed. 446, 449; *Nellis* v. *Pennock Mfg. Co.,* 38 Fed. 379. Under this exception, therefore, if the instrument here relied on had been effective to make the plaintiff an assignee or grantee of the patent or " of any interest therein " within the meaning of § 4898, Rev. Stats., as amended, then the plaintiff could have maintained this action for damages for infringements prior to the execution of the instrument; but, as we hold, the instrument did not have this effect.

But it is urged that under Equity Rule 37 every action

must be prosecuted in the name of the real party in interest, and, therefore, as the plaintiff is the beneficial owner of the claims for past infringements, it should be permitted to sue in a court of equity. The equity rule was not intended to set aside a policy and rule having its source in the patent statutes and can not affect this case. The rule laid down by Circuit Judge Blatchford in *Gordon* v. *Anthony, supra,* applied to both actions in equity and law and grew out of the sections of statutes quoted by him and not since amended. Both at law and in equity, either the owner of the patent at the time of the past infringement, or the subsequent owner of the patent who is at the same time the assignee of the claims for past infringement, must be a party to a suit for damages for the past infringement. If the owner of the patent when the infringements took place has assigned his patent to one, and his claims for damages for infringement to another, then the latter can not sue at law at all but must compel his assignor of the claims to sue for him. In equity both such assignor and the assignee who is the real party in interest must join as plaintiffs. Such assignor is a necessary party and a bill for accounting and damages is fatally defective otherwise. III Robinson on Patents, §. 1099; *Dibble* v. *Augur,* 7 Blatchf. 86; 7 Fed. Cas. 642, No. 3,879; *Gamewell Fire-Alarm Telegraph Co.* v. *City of Brooklyn,* 14 Fed. 255; *Ball* v. *Coker,* 168 Fed. 304. As the owner of the patent is not a party to this bill, the result is that on no ground can the bill of the plaintiff be sustained and that the motion to dismiss should have been granted.

*The decree of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.*