### GREEN v. LE CLAIR.

Circuit Court of Appeals, Seventh Circuit.
January 10, 1928.

No. 3682.

Patents ⬥==202(1), 290(1)—Instrument granting exclusive right to manufacture, use, sell, and right to grant license to others, held absolute assignment precluding suit for infringement by patentee.

Instrument executed by patentee, granting an exclusive right to manufacture, use, and sell, and to grant such right to others, as to the invention, and containing grant of license to patentee covering certain states, *held* to constitute an absolute assignment precluding suit by patentee for infringement in his own name.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Sanford D. Le Clair against Leslie P. Green. Decree for plaintiff, and defendant appeals. Reversed and remanded, with directions.

Brayton G. Richards and Max W. Zabel, both of Chicago, Ill., for appellant.

Wallace R. Lane, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a suit for the infringement of patent No. 1,120,824, issued to Sanford D. Le Clair, the appellee.

The questions raised on this appeal are whether there was infringement, and whether the suit was properly brought in the name of the appellee alone. The view we take of the case makes it necessary to consider only the latter, which turns upon the construction of an instrument entered into on March 30, 1921, between the appellee and one John A. Sauerman, which reads in part as follows:

"Memorandum of agreement made and entered into the 30th day of March, 1921, by and between Sanford D. Le Clair of San Francisco, California, party of the first part, and John A. Sauerman of Chicago, Illinois, sole proprietor of the business operating under the name of Sauerman Brothers, party of the second part, witnesseth:

"Whereas, the party of the first part is the sole owner of United States letters patent No. 1,120,824, granted to him on December 15, 1914, for scrapers.

"And Whereas, the party of the second part is desirous of acquiring the exclusive right to make, use, and sell scrapers embodying the invention of said patent throughout all foreign countries, and the United States and its territories and dependencies; and the party of the first part is desirous of manufacturing and selling said scrapers within certain territory of the United States as hereinafter set forth:

"Now Therefore, for and in consideration

of the premises and the agreements and covenants hereinafter recited and to be performed, and the sum of $1.00 by the party of the second part to the party of the first part in and paid, the receipt of which is hereby acknowledged, it is understood and agreed as follows:

"1. The party of the first part covenants that he is the sole and exclusive owner of the aforesaid patent No. 1,120,824 and the said invention covered thereby; that he has full right to enter into this agreement; and that there are no outstanding licenses, or other rights of any character whatsoever outstanding under said patent.

"2. The party of the first part hereby gives and grants to the party of the second part, his heirs, legal representatives, and assigns, the exclusive right to manufacture, use, and sell, and to grant to others the right to manufacture, use, and sell, scrapers embodying the invention of said patent and any and all modifications thereof and improvements thereon that the party of the first part may now own or hereafter own or control, throughout all foreign countries and the United States, its territories and dependencies, to the full end of the term of said patent or/and the full end of the terms of any and all patents on improvements thereon now, or hereafter, owned or controlled by the party of the first part.

"3. The party of the second part hereby covenants to pay to the party of the first part the following sums as royalties under this agreement. * * *

* * * * * *

"8. The party of the second part gives and grants to the party of the first part a license, without royalty, to make scrapers embodying the invention of the said patent, within the states of California, Arizona, Washington, Nevada, and Oregon, but only for sale or lease to consumers direct, for use only in the states of California, Arizona, Nevada, Washington, and Oregon, the party of the first part hereby agreeing not to enter into any agreement with any dealer or jobber to ship any scrapers made by, or for, him, outside of the said states of California, Arizona, Nevada, Washington, and Oregon. 'In case of an absolute sale of said patent as herein provided, all rights in and to the same shall pass to said second party.' "

The character of the provisions in the remaining fifteen clauses of the instrument appears sufficiently in the following extract from the findings of the master to whom the case was referred:

"Le Clair granted to Sauerman the ex-clusive right to manufacture, use, and sell scrapers under his patent in the United States and foreign countries and to grant to others the same right,

"Le Clair reserving the right to terminate the contract in case of failure by Sauerman to pay royalties;

"Sauerman granted to Le Clair a license, without royalty, to make and sell scrapers to consumers only in the states of California, Washington, Arizona, Nevada, and Oregon;

"Le Clair granted to Sauerman an option to purchase the patent outright at any time during the existence of the contract on stated terms;

"Le Clair agreed to promptly prosecute at his own expense all infringers whose infringements occurred prior to the making of the contract, he to retain all sums collected, and to notify Sauerman of such infringement suits, and especially agreed to immediately take steps, legal if necessary, to effect discontinuance of the infringement of the patent by defendant;

"Le Clair and Sauerman agreed that as to all infringements occurring after the execution of the contract the matter of bringing suit should be considered by both parties, and if it was agreed in writing that suit be brought, each party was to bear one-half of the expense and be entitled to one-half of the amount recovered, and if the parties should not agree in the matter of bringing suit, then either party was to have the right to bring suit at his own expense and any and all recoveries resulting therefrom would be for the sole benefit of the party bringing the suit, Le Clair agreeing that Sauerman might use his name in prosecuting necessary infringement suits; and

"Le Clair agreed that Sauerman should have the right at any time to terminate the contract by giving one year's notice provided he should not then be in default in the payment of royalties."

The bill was filed December 21, 1921, for infringements alleged to have occurred after the execution of this agreement, and not in California, Washington, Arizona, Nevada, or Oregon.

Appellant, in proper time, moved to dismiss the bill for defect of parties. The motion was overruled, and the cause referred to the master, who found that Sauerman was a mere licensee. In rendering the decree appealed from, the District Court approved this finding.

The contention of the appellant is that the instrument executed by the appellee was an assignment of the patent, and that there-

fore the appellee could not sue in his own name for infringements occurring after such assignment; or at least that Sauerman, the assignee, was an indispensable party.

In Waterman v. Mackenzie, 138 U. S. 252, 11 S. Ct. 334, 34 L. Ed. 923, the Supreme Court said:

"Every patent issued under the laws of the United States for an invention or discovery contains 'a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States and the territories thereof.' Rev. Stat. section 4884 [35 USCA § 40; Comp. St. § 9428]. The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States. Rev. Stat. § 4898 [35 USCA § 47; Comp. St. § 9444]. A transfer of either of these three kinds of interest is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. Rev. Stat. § 4919 [35 USCA § 67; Comp. St. § 9464]; Gaylor v. Wilder, 10 How. 477, 494, 495 [13 L. Ed. 504]; Moore v. Marsh, 7 Wall. 515 [19 L. Ed. 37]. * * *

"Whether a transfer of a particular right or interest under a patent is an assignment or license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."

Clause 2 of the agreement entered into between the appellee and Sauerman, standing alone, transferred to Sauerman all that the United States conferred on the patentee by the terms of the letters patent, and, under Waterman v. Mackenzie, supra, made Sauerman the assignee of the patent. The question is whether this clause, when construed with the additional provisions in the contract, enumerated in the excerpt from the master's report set out above, and relied up-

on by the appellee, can be held to make of Sauerman a mere licensee.

Clause 8 of the contract contains the only other provision dealing directly with the transfer of present interests in the patent. It was a grant of what the parties called a license, without royalty, to Le Clair to make scrapers embodying the invention in the states of California, Arizona, Washington, Nevada, and Oregon, but only for sale or lease to consumers in these states direct, for use only in such states. In Waterman v. Mackenzie there was an assignment of the patent, with a license back to Waterman to manufacture and sell. In principle the provisions are parallel, and what Le Clair and Sauerman called a license is plainly one, under the Waterman Case and every other authority in which such an interest is considered.

Robinson on Patents, § 764, says:

"The character of a conveyance, as thus determined by its subject-matter, cannot be varied by the terms and conditions upon which the transfer has been made. These belong to the contract in pursuance of which the transfer was effected, not to the nature of the transfer itself. The parties may annex such qualifications to the conveyance, and impose such obligations upon themselves in reference to their respective rights, as they may deem expedient—if the instrument transfers any interest in the invention which carries the monopoly, it is an assignment or grant, but otherwise is a license. Thus, though they should provide that the consideration for the transfer shall be paid by the alienee to the alienor in the form of periodic royalties, or that the title of the alienee shall become forfeited by breach of certain specified conditions—provisions which are generally annexed only to licenses—the conveyance will be none the less an assignment or a grant, if in its subject-matter it embraces any interest in the monopoly."

This is fully supported by the authorities. In Boesch v. Graff, 133 U. S. 697, 10 S. Ct. 378, 33 L. Ed. 787, there was a provision in the contract of assignment that under certain circumstances the title to the patent should revert to the assignor. The Supreme Court held that the title had already vested, but was liable to be defeated in futuro on failure of the condition subsequent. In Rude v. Westcott, 130 U. S. 152, 9 S. Ct. 463, 32 L. Ed. 888, there was an assignment with a provision in the instrument of which the court said:

"The concluding provision, that the net profits arising from sales, royalties, or set-

tlements, or other source, are to be divided between the parties to the assignment so as to give the patentee one-fourth thereof, does not, in any respect, modify or limit the absolute transfer of title. It is a provision by which the consideration for the transfer is to be paid to the grantor out of the net profits made; it reserves to him no control over the patents or their use or disposal, or any power to interfere with the management of the business growing out of their ownership."

The case of Littlefield v. Perry, 88 U. S. (21 Wall.) 205, 22 L. Ed. 577, presents many of the features of the present case. Littlefield was the patentee. He entered into two agreements, one called a "grant" and the other a "supplementary agreement," with Treadwell & Perry (through whom the complainant derived title to the patent). The agreements contained an assignment of the patentee's complete interest in the patent. There was a provision voiding the assignment upon the failure of the assignee to make and sell the patented articles in quantities sufficient to meet the demand; another stipulating what royalty was to be paid and requiring an accounting; another purporting to reserve to the patentee a designated application of the patented article; and another requiring the patentee to attend to any litigation involving the patent. One of the issues in that case was the extent of title acquired by the complainant, and his capacity to bring suit. The court held Treadwell & Perry to be assignees within the meaning of the patent laws, and said, "Neither the agreement to account and pay the royalty nor the clause of forfeiture for nonperformance contained in that instrument reduced them to the position of licensees." The court held the extent of the provision for bringing suit was merely to place the costs and expenses of litigation on the patentee.

In the agreement between Le Clair and Sauerman, neither the option to purchase the patent outright nor the provision that Sauerman may under certain conditions terminate the contract, qualifies the interest assigned. As to the latter, it was to be operative only when the right was exercised, and might well be used in a contract of license, an assignment of a patent, or a transfer of any other property. Exercise of the option to purchase outright for a lump sum would free Sauerman from his obligations under the agreement—recognition of the rights Le Clair had in the five states named in the agreement; the payment of royalty; the liability to forfeiture—but it could not add to the monopoly conferred upon Sauerman by clause 2.

It is not perceived how a contract between the parties that they shall together consider the bringing of suit against infringers, and, if they are unable to agree, either may proceed at his own expense, could alter the effect of what is otherwise an absolute assignment. In Crown Company v. Nye Tool Works, 261 U. S. 24, 43 S. Ct. 254, 67 L. Ed. 516, Chief Justice Taft said:

"The effect of the opinion in that case (Gayler v. Wilder, 10 How. 477 [13 L. Ed. 504]) is that the monopoly granted the patentee is for one entire thing, and, in order to enable an assignee to sue, he must have received the entire and unqualified monopoly in the territory specified."

Under that case the right to sue for future infringements is not separable from the monopoly conferred by a patent, but is merely an incident of that monopoly. There is no question but that the instrument executed by Le Clair and Sauerman, whatever the effect attributed to the provisions discussed in this opinion, conferred on Sauerman an unqualified monopoly in the patent throughout the forty-three states not named in the agreement, and therefore Le Clair was without capacity to bring this suit in his own name.

Reversed and remanded, with direction to dismiss the bill.