Paulette GRANTHAM, Fred Grantham, Charles R. Grantham, Individuals, Plaintiffs-Appellants,

v.

McGRAW–EDISON COMPANY, Essick Investment Co., "Automatic" Sprinkler Corporation of America, Corporations Defendants-Appellees.

No. 18394.

United States Court of Appeals, Seventh Circuit.

May 7, 1971.

Rehearing Denied June 10, 1971.

Albert Langeluttig, Chicago, Ill., Robert A. Felsman, Fort Worth, Tex., Paul H. Gallagher, Chicago, Ill., Wofford & Felsman, Fort Worth, Tex., Simon & Simon, Henry W. Simon, Sr., Fort Worth, Tex., for appellants.

James Van Santen, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for McGraw-Edison Co.; Charles A. Prudell, Elgin, Ill., of counsel.

Before SWYGERT, Chief Judge, FAIRCHILD, Circuit Judge, and GORDON, District Judge.*

SWYGERT, Chief Judge.

The principal question in this appeal is whether suit for infringement of a patent may be brought by a patent owner who has granted to another the sole and exclusive license to practice his invention but has reserved the right to receive royalties and to protect his royalty interest by suing infringers if his licensee fails to do so.

Paulette, Fred, and Charles R. Grantham appeal from a district court order denying their motion to reinstate their complaint. The suit, charging McGraw-Edison Company with patent infringement and seeking legal and equitable relief, had been dismissed (with leave to reinstate) on the ground that the Granthams, though they held legal title, had assigned all their substantial rights under the patents allegedly infringed and therefore lacked capacity to sue.

The patents in question, No. 2,604,313, dated July 22, 1952, and No. 2,643,463, dated June 30, 1953, issued to Frederick W. Grantham who assigned his interest in them to his wife, JoAnn E. Grantham. On Mrs. Grantham's death, her rights in the patents descended to her children, who are the plaintiffs in this action. On March 21, 1956, JoAnn E. Grantham, at a time when she owned the patents, granted what was termed an "exclusive license" to the T. L. Smith Co. of Milwaukee, Wisconsin. As the result of a subsequent merger, T. L. Smith became a division of a company then known as Smith-Essick, Inc., a California corporation, which succeeded to T. L. Smith's rights under the licensing agreement.

On May 1, 1967, Smith-Essick transferred substantially all of its personal property to "Automatic" Sprinkler Corporation of America, an Ohio corporation. Smith-Essick then changed its name to Essick Investment Co. and continues to carry on business under that name. By reason of this sale of assets, Automatic succeeded to Essick's rights under the "exclusive license" agreement and performed its obligations under that agreement throughout the life of the two patents, both of which expired during the pendency of this litigation.

The Granthams' original complaint named Essick as a party-plaintiff. (It should be noted at this point that Essick is not subject to service of process in Illinois and has never formally appeared in this action.) McGraw-Edison sought dismissal of the complaint on the ground that the then exclusive licensee, that is, Automatic, was an indispensable party and had not been joined in the suit. Thereafter, the Granthams amended their complaint by naming Automatic as a defendant and changing Essick from a party-plaintiff to a defendant. After Automatic had appeared and filed answer, McGraw-Edison requested that Essick and Automatic be realigned as

* Judge Myron L. Gordon is sitting by designation from the United States District Court for the Eastern District of Wisconsin.

plaintiffs. Automatic objected to the request and waived all damages for infringement, stating that it had no dispute with McGraw-Edison.

McGraw-Edison then moved that the complaint be dismissed on the grounds that: (1) the Granthams lacked capacity to sue in their own name; and (2) there was no case or controversy in light of Automatic's waiver of damages. On July 24, 1968, the district court entered a memorandum and an order dismissing the case on the ground that the "exclusive license" agreement which JoAnn Grantham had granted to the predecessor of Automatic, that is, T. L. Smith, was in effect an assignment of all substantial rights under the patents and that only the assignees were entitled to sue for infringement. The court ruled that since Automatic refused to become a party-plaintiff the Granthams lacked standing to sue for infringement; this disposition made ruling on the "case or controversy" issue unnecessary.

On October 25, 1968, the district court vacated its dismissal order of July 24 and reinstated the case; but on February 27, 1969, the suit was again dismissed with leave to reinstate within ninety days. The leave was granted to permit the plaintiffs time within which to bring Essick into the case or to abandon its claim for damages for the period during which Essick was the exclusive licensee. On June 11, 1969, the district court denied the motion to reinstate the complaint for the period prior to May 1, 1967, on which date Smith-Essick transferred its assets to Automatic. The court deferred ruling on the remainder of the complaint. Plaintiffs obtained a thirty-day extension of the period within which they were required to file their appeal from this June 11 order; and they did file their notice of appeal on August 11, 1969. On September 18, 1969, the district court denied the motion to reinstate the complaint for the period after May 1, 1967. Plaintiffs filed a notice of appeal from this order on October 16, 1969.

I

■■ McGraw-Edison challenges our appellate jurisdiction to consider the merits of the question of the Granthams' capacity to sue for the alleged infringement. McGraw-Edison contends that no appeal from the dismissal order of February 27, 1969, was filed within the time prescribed by Rule 4 of the Federal Rules of Appellate Procedure. It argues that the orders of June 11 and September 18, denying plaintiffs' motions to reinstate, were in effect denials of requests to vacate the February 27 order. Motions for rehearing or to vacate a final order and like motions are addressed to the discretion of the trial court; and the denial of such an order is not itself appealable. Bass v. Baltimore & O. Terminal R. R., 142 F.2d 779 (7th Cir.), cert. denied, 323 U.S. 775, 65 S.Ct. 135, 89 L.Ed. 619 (1944). But the *Bass* case is not applicable to the situation before us. The district court's February 27 order dismissing with leave to reinstate did not terminate the litigation on the merits, *see* Asher v. Ruppa, 173 F.2d 10, 11 (7th Cir. 1949); it gave the plaintiffs the opportunity to amend their complaint. A dismissal with leave to amend is not a final order. *See* Jung v. K. & D. Mining Co., 356 U.S. 335, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958); Western Electric Co. v. Pacent Reproducer Corp., 37 F.2d 14 (2d Cir. 1930); and 9 J. Moore, Federal Practice ¶ 110.08[1] (2d ed. 1970).

■ After the dismissal order and during the reinstatement period, plaintiffs elected to stand on their complaint and moved that it be reinstated without amendment. It was not until this motion was denied that the plaintiffs were unequivocally denied the relief they requested. Since plaintiffs filed notices of appeal from both the June 11 and the September 18 orders within the time limits allowed by Rule 4 of the Federal Rules of Appellate Procedure, defendant's contention that there is no appealable order properly before us is without merit.

## II

McGraw-Edison contends that the Granthams are collaterally estopped from recovering in this action by an adverse judgment in a related infringement suit. They refer to Grantham v. Morgan Linen Service, Inc., No. 68 C 252 (N.D.Ill., July 28, 1969), appeal dismissed, 426 F.2d 237 (7th Cir. 1970), a suit raising the same issues, where it was held that the Granthams lacked capacity to sue for infringement of the patents involved here. McGraw-Edison argues that that judgment precludes the Granthams from relitigating the same issues.

■■ The established rule of res judicata and the related doctrine of collateral estoppel is that "the estoppel of a judgment must be mutual." Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 127, 32 S.Ct. 641, 642, 56 L.Ed. 1009 (1912). As the result of Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), the requirement of mutuality is particularly strong in patent litigation. Technograph Printed Circuits, Ltd. v. United States, 178 Ct.Cl. 543, 372 F.2d 969 (1967); Nickerson v. Kutschera, 419 F.2d 983 (3d Cir. 1969). The rule in this circuit is that the mutuality requirement prevents a litigant from invoking the collateral estoppel effect of a prior judgment rendered in an action to which he was not a party. McVeigh v. McGurren, 117 F.2d 672, 677–678 (7th Cir. 1940), cert. denied, 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531 (1941); Aghnides v. Holden, 226 F.2d 949 (7th Cir. 1955);

Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442 (7th Cir.), cert. denied, 384 U.S. 950, 1002, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966). Since McGraw-Edison was not a party to the Morgan Linen Service litigation, mutuality is lacking and the decision in that case cannot estop the Granthams in this case.

■ Of course, regardless of collateral estoppel, a prior judgment which disposes of the same issues as those raised in a later suit, may be given weight in the later suit either as precedent or as the result of comity. See Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., supra at 449. Indeed, that is what occurred in the instant case when the district judge adopted the opinion which had been announced in Grantham v. Morgan Linen Service, Inc., supra. There is nothing in the record to indicate that he invoked the collateral estoppel doctrine in reaching his decision; but even if he had done so, its invocation would have been erroneous.

## III

The principal issue raised in this appeal concerns the Granthams' capacity to sue for infringement. The Granthams rely primarily on paragraph eleven of the Grantham-Smith license agreement which provides that the licensee may sue infringers, but if it elects not to bring suit, the Granthams shall have the "right * * * to bring suit for * * * infringement and to join [the licensee] [1] as a party plaintiff." [2] Mc-

1. For convenience, we will continue to refer to T. L. Smith and its successors in interest under the license agreement as "licensees" even though they would properly be designated "assignees" under the district court's interpretation of the agreement.
2. Paragraph 11 of the license agreement reads in its entirety:

In the event of infringement of the aforesaid patents, or either of them, Smith Company shall be privileged but not required to bring suit and to control the conduct thereof against the in-

fringer, and to join Grantham as a party plaintiff in such suit. In the event Smith Company exercises the privileges here conferred, it shall have the right to first reimburse itself out of any sums recovered in such suit or in settlement thereof for all costs and expenses of every kind and character, including reasonable attorney's fees, necessarily involved in the prosecution of any such suit, and if after such reimbursement, any funds shall remain from said recovery, it shall be divided one-half to Grantham and one-half to Smith

Graw-Edison, on the other hand, contends that the license agreement conveyed such extensive rights under the patents that the agreement constituted an "assignment" and that, as a consequence, title to the patents was vested in the licensee who became the sole party entitled to sue for infringement. The district court agreed with McGraw-Edison and held that paragraph eleven of the license agreement was an impermissible attempt to divide the monopoly of the patents.

The patents cover improvements in laundry driers. The license agreement gave T. L. Smith the "sole and exclusive right and license * * * solely to make or have made for it, and to use and sell Driers * * * embodying the invention." The name "Grantham" was required to be displayed on all driers manufactured under the agreement. Mrs. Grantham reserved the right to receive royalties based on the sales of licensed driers and to terminate the agreement under certain conditions. T. L. Smith had the absolute right to terminate on sixty days' notice, but was required to make every reasonable effort to promote the sale of the licensed driers while the agreement remained in effect. As already noted, Mrs. Grantham retained the right to sue for infringement and to join the licensee as a plaintiff in the event the latter elected not to sue. T. L. Smith was not given the right to grant sublicenses and could only assign its rights under the agreement to a "successor in business."

The foregoing provisions of the Grantham-Smith agreement show that Mrs. Grantham did not intend to grant to T. L. Smith several important incidents of ownership in the patents, namely: the exclusive right to exclude others from practicing the invention (manifested by Mrs. Grantham's reservation of the right to sue infringers in order to protect her royalty interest); the right to license others; and the right to refuse to exploit the invention. The question before us is whether the Grantham-Smith agreement, despite these limitations, was an assignment of the patents to T. L. Smith, thus depriving the plaintiffs, as successors of the "assignor," of the capacity to sue infringers. Our answer turns on whether the limitations on the title granted to T. L. Smith constituted an impermissible attempt to divide the patent monopoly.

■ The district court interpreted the decision in Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), to require a holding that the Grantham-Smith agreement was a conveyance of the entire title to the patents thus vesting in T. L. Smith and its successors the sole right to sue infringers. Although that case clearly holds that a patent monopoly "is one entire thing, and cannot be divided into parts," 138 U.S. at 255, 11 S.Ct. at 335, we find nothing in that decision which would prevent a patent owner who has granted another the exclusive right to practice his invention conditioned on payment of certain royalties from protecting his

Company. In the event Grantham receives notice of infringement, she shall promptly notify Smith Company in writing of such infringement, and if Smith Company does not bring suit against said infringer, as herein provided, within 90 days after receipt of such notice, Grantham shall have the right, but shall not be obligated to bring suit for such infringement and to join Smith Company as a party plaintiff, in which event Grantham shall hold Smith Company free, clear and harmless from any and all costs and expenses of such litigation, including attorney's fees, but in such event any

sums recovered in any such suit or in settlement thereof shall belong to Grantham. However, any such sums received by Grantham, after deduction of the costs and expenses of litigation, including attorney's fees paid, shall be considered as royalty payments for the sole purpose of determining the minimum annual royalty provided for in Paragraph 5 above. Each party shall always have the right to be represented by counsel of its own selection and at its own expense in any suit instituted by the other for infringement, under the terms hereof.

royalties by reserving the right to sue infringers. So long as infringers are not subjected to multiple suits for the same infringement a patent owner and his exclusive licensee may partition as they see fit all the rights flowing from the patent grant.

Neither Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923), nor Green v. Le Clair, 24 F.2d 74 (7th Cir. 1928), conflict with this view. In *Crown Die & Tool Co.*, a patent owner, while retaining the right to practice his invention, assigned his right to sue a particular infringer. The Supreme Court held the assignment invalid, stating that the right to exclude infringers is an incident of patent ownership "which can only pass by assignment when attached to the right to make, use and vend." 261 U.S. at 36, 43 S.Ct. at 256. The bare assignment of the right to sue an infringer is clearly distinguishable from the retention by the patent owner of the right to sue infringers if his exclusive licensee elects not to sue.

In Green v. Le Clair, *supra*, the patentee Le Clair granted an exclusive license to one Sauerman. Sauerman, in turn, licensed Le Clair to make and sell the patented article in five specified states for use only in those states. Le Clair sued Green for infringement without joining Sauerman. The district court found that Sauerman was a "mere licensee" and therefore not an indispensable party. We reversed. After referring to *Crown Die & Tool Co.*, *supra*, and Gayler v. Wilder, 10 How. 477, 51 U.S. 477, 13 L.Ed. 504 (1850), for the proposition that the "right to sue for future infringements is not separable from the monopoly conferred by a patent, but is merely an incident of that monopoly," we said: "There is no question but that the instrument executed by Le Clair and Sauerman * * * conferred on Sauerman an unqualified monopoly in the patent throughout the forty-three states not named in the agreement, and therefore Le Clair was without capacity to bring this suit in his own name." 24

F.2d at 77. The license agreement in that case purported to give both Le Clair and Sauerman the right to sue independently if they would not agree to join in a single suit. To avoid the possibility that an infringer would be subjected to successive suits in violation of the principle established by Gayler v. Wilder, *supra*, we held that the license agreement did not give Le Clair the right to maintain the suit *"in his own name."* Implicitly, we held that he was required to join Sauerman. There is no indication in *Green* that if Sauerman had been joined as an involuntary party according to the procedure authorized by Independent Wireless Telegraph Co. v. Radio Corp. of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), the suit might not have been maintained.

In *Independent Wireless, supra,* the Supreme Court held that a licensee holding the exclusive right throughout the United States to use and sell certain patented devices for specified purposes had the right to maintain an infringement action upon joining the patent owner as party-plaintiff. The Court stated the question for its consideration thus: "Can the Radio Company make the De Forest Company a coplaintiff against its will under the circumstances of the case?" 269 U.S. at 464, 46 S.Ct. at 168. The Court, answering in the affirmative, said, "if the owner of a patent, being within the jurisdiction refuses or is unable to join an exclusive licensee as coplaintiff, the licensee may make him a party defendant by process * * * [and] if there is no other way of securing justice to the exclusive licensee, the latter may make the owner without the jurisdiction a coplaintiff without his consent. * * * *"* 269 U. S. at 468, 472, 46 S.Ct. at 169, 171.

█ We hold that Mrs. Grantham's reservation of the right to sue infringers does not violate the policy against a division of the patent monopoly. Nothing in Waterman v. Mackenzie, Crown Die & Tool Co. v. Nye, or Green v. Le Clair requires us to rule that paragraph eleven of the Grantham-Smith agreement

is invalid. Since paragraph eleven is valid, it prevents the agreement from being deemed an assignment and effectively reserves to the Granthams the right to sue for infringement. Any different conclusion would leave a patentee who grants an exclusive license but reserves a royalty interest in his invention at the mercy of his licensee. He would be left without an effective remedy if his licensee failed to prosecute infringers.

There is no possibility that McGraw-Edison will be subjected to successive suits. It is clear from the record that both Essick and Automatic had notice of the Granthams' intention to sue and had been requested to join in the suit. Both were ultimately named as defendants. Automatic was served with process and appeared in the action. Although Essick was not served, *Independent Wireless* teaches that it could be made a co-plaintiff even against its will.

While this suit was pending in the trial court, Essick assigned to the Granthams any rights which it retained in the patents, including any rights to recover for infringement occurring while it was licensee. Shortly before this appeal was heard Automatic exercised its right to terminate the license agreement and assigned back to the Granthams all its rights under the agreement including the right to sue for infringement. The plaintiffs argue that even if we were to agree with McGraw-Edison's position that paragraph eleven of the license agreement is invalid and therefore that the agreement must be deemed an assignment rather than a license, we should permit them to sue as assignees of Essick's and Automatic's claims. Though we choose not to rely on this argument, the facts on which it is based doubly show that there is no possibility of multiple suits against McGraw-Edison for infringement of these patents.

Since Essick and Automatic are no longer licensees, have assigned whatever rights they possessed to recover for infringement, and have disclaimed any interest in the outcome of this suit, they should be permitted to drop out of this litigation. McGraw-Edison's contention that the presence of Essick and Automatic is necessary to its ability to raise certain unspecified defenses or counterclaims has no merit. Any defenses it has may be asserted against the plaintiffs; whatever counterclaims it has against Essick or Automatic may be asserted in independent actions.

The order of the district court dismissing the complaint is reversed and the cause is remanded for further proceedings consistent with this opinion.

### Memorandum on Petition for Rehearing

**PER CURIAM.**

In our analysis of collateral estoppel at part II of our opinion, 444 F.2d 213, we relied on Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), and related cases for the proposition that mutuality of estoppel is a strict requirement in patent litigation. Since *Triplett* has been overruled by Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), McGraw-Edison argues that we must reverse our initial decision and affirm the judgment of the district court. We disagree.

An initial problem posed by McGraw-Edison's argument is whether the assertion of their estoppel defense was timely. The decision on which McGraw-Edison bases its defense of estoppel, Grantham v. Morgan Linen Service, Inc., No. 68 C 252 (N.D.Ill., July 28, 1969), appeal dismissed, 426 F.2d 237 (7th Cir. 1970), was filed over seven weeks before the Granthams' claims in this suit were finally dismissed in full. While the district judge hearing the instant suit had knowledge of the termination of the *Morgan Linen Service* litigation, the record does not show where he obtained that knowledge; and as we pointed out in our decision, the judge did not purport to apply the doctrine of estoppel. No motion setting up the *Morgan Linen Service* judgment as a bar to the Granthams'

claims was filed in the district court. The pendency of the Granthams' late filed appeal from the *Morgan Linen Service* judgment did not detract from the conclusive effect of that judgment. Prager v. El Paso National Bank, 417 F.2d 1111 (5th Cir. 1969). *See also* 1B J. Moore, Federal Practice ¶ 0.416 [3] (2d ed. 1965). McGraw-Edison did not assert the *Morgan Linen Service* judgment as a bar until March 9, 1970 when it filed its motion to dismiss the Granthams' appeal in the instant case. A party normally may not rely on an estoppel which was available to him in the trial court but which was not raised prior to appeal. *See* West Virginia N. R. R. v. United States, 391 F.2d 627, 636 (Ct.Cl. 1968).

■ We need not rely solely on McGraw-Edison's late assertion of its estoppel defense, for the *Blonder-Tongue* decision was not intended to constitute a wholesale rejection of the mutuality requirement. The holding of *Blonder-Tongue* was that "*Triplett* should be overruled to the extent it forecloses a plea of estoppel by one facing a charge of infringement of a patent that has once been declared invalid." That holding does not reach this case where there has never been a determination of the validity of the Granthams' patents; and we do not believe that this is a proper case for the extension of *Blonder-Tongue's* abrogation of the mutuality requirement to situations where there has not been a prior determination of patent invalidity.

After thorough consideration, we have concluded that the district court made a clear error of law in dismissing the Granthams' complaint. We are not precluded from correcting that error because a similar error in the *Morgan Linen Service* litigation went uncorrected. Had the Granthams been aware of the impending partial abrogation of the mutuality requirement and the possibility that the judgment adverse to them in the *Morgan Linen Service* litigation might be asserted against them by other alleged

infringers not parties to that action, they would undoubtedly have been more diligent in prosecuting their appeal from that judgment.

■ On the record before us, we believe that the application of the doctrine of collateral estoppel to bar the Granthams from presenting their claims would result in manifest injustice. Accordingly, we should not be obliged to apply the doctrine of estoppel even if the mutuality requirement had been met. *See* Restatement of Judgments § 70 (1942).

The petition for rehearing is denied.