PUBLIC VARIETIES OF
MISSISSIPPI, INC., Plaintiff,

v.

SUN VALLEY SEED COMPANY, INC.
and Sun Valley Cotton, Inc.,
Defendants.

No. DC89–44–B–O.

United States District Court,
N.D. Mississippi,
Delta Division.

March 28, 1990.

Joe Gibbs, Clarksdale, Miss., for plaintiff.

Greg White, Waco, Tex., and Thomas J. Suszek, Oxford, Miss., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court on the plaintiff's motion for a preliminary injunction. After an evidentiary hearing, the court took this motion under advisement. Having duly considered the motion, briefs, and evidence introduced at the hearing, the court is prepared to rule on the plaintiff's motion.

### I. FACTS

The Mississippi Agricultural and Forestry Experiment Station ("MAFES") developed a novel variety of cotton, DES 119, for which it applied and was granted a certificate of plant variety protection pursuant to the Plant Variety Protection Act ("PVPA").[1]

After MAFES received its certificate, it entered into an agreement with the plaintiff, Public Varieties of Mississippi, Inc.

---

1. 7 U.S.C. §§ 2321–2582.

("PVM"). The agreement required that MAFES produce foundation[2] class seed and supply it exclusively to PVM, and that PVM "sublicense" the right to market and sell the seed for the purposes of lint production and seed propagation. Pursuant to the agreement, PVM sold substantial quantities of DES 119 and attached tags which notified prospective purchasers of the limitations regarding DES 119 use.

In 1987 and 1988, the owner and chief officer of both defendant corporations, Hal Jones, purchased significant tonnage of DES 119. Despite his awareness of the restrictions involving the resale of DES 119, Jones resold some of the seed he had purchased, and is continuing to sell DES 119 without permission of either MAFES or PVM.

PVM has filed suit for damages and injunctive relief and now moves for a preliminary injunction in order to protect its rights and the rights of MAFES. PVM claims that under the PVPA and its agreement with MAFES, it is entitled to enforce the certificate of plant variety protection issued for DES 119 if it brings alleged violations to the attention of MAFES and MAFES, in writing, notifies PVM that it does not wish to pursue a course of action on its own. The defendants, however, assert that PVM is a mere licensee of MAFES, and that as a licensee, the plaintiff has no authority under the PVPA to enjoin any violations of the DES 119 certificate. Additionally, the defendants argue that PVM has not met the stringent requirements for a preliminary injunction, and that preliminary relief is therefore unwarranted.[3] Because there is little case law construing the PVPA, the court will examine the underlying purpose and relevant legislative history of the Act before determining whether PVM is entitled to a preliminary injunction.

## II. LAW

Congress enacted the Plant Patent Act of 1930, 35 U.S.C. §§ 161–64, to provide patent protection to novel varieties of non-sexually reproduced plants. By 1970, it became apparent to Congress that true-to-type reproduction was possible for sexually reproduced plants; Congress accordingly passed the Plant Variety Protection Act to supplement the Plant Patent Act and granted patent-like protection for sexually reproduced plants. *See Diamond v. Chakrabarty*, 447 U.S. 303, 313, 100 S.Ct. 2204, 2209, 65 L.Ed.2d 144 (1980). In effect, then, the PVPA awards the equivalent of patent protection to sexually reproduced plants which meet the Act's certification requirements.[4] 5 Libscomb, *Walker On Patents*, § 17.4 (3d ed.1988).

Because of the similarity in purpose and construction between the PVPA and the patent laws, cases construing the patent statutes supply compelling analogies to aid the court in interpreting the PVPA. Under the patent laws, only an owner of the patent may bring a civil action to enforce the exclusionary right which the patent grants. *Waterman v. Mackenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891); *Rel–Reeves, Inc. v. United States*, 606 F.2d 949, 221 Ct.Cl. 263 (1979); *Motorola, Inc. v. Varo, Inc.*, 656 F.Supp. 716 (N.D.Tex.1986). In other words, a party must own some interest in the patent itself before he can invoke the patent laws and enforce the patent's exclusionary power.

This rule is merely an extension of the statutory property right granted under a patent—the right to *exclude* others from making, vending or using a particular item. *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 34–35, 43 S.Ct. 254, 256, 67 L.Ed. 516 (1922). The common law bestows upon every inventor

---

2. DES 119 is separated into four classes of seed, with each class name being determined by the number of reproduction generations from which it is distanced from the original seed. First generation seed is termed "breeder" class. In descending order of quality, the other classes are "foundation," "registered," and "certified."

3. The defendants have also filed a motion to dismiss which is currently pending.

4. Much of the statutory language found in the PVPA is nearly identical to that found in the patent code. *Compare* 7 U.S.C. §§ 2531, 2541, 2561–65. *with* 35 U.S.C. §§ 261, 271, 281–285.

the right to make, use and vend his invention, and the patent statute "clothe[s] him with the power to *exclude* everyone else from making, using or vending it." *Id.* at 36, 43 S.Ct. at 256 (emphasis supplied). "The Government is not granting the common law right to make, use and vend, but it is granting the incident of exclusive ownership of that common law right, which can not be enjoyed save with the common law right." *Id.* Hence, to effectively convey a patent's exclusionary power, which is the incident of owning all three common law rights in an invention, a patentee must sufficiently convey each of his common law rights to make, sell or vend his invention so as to also convey to the recipient the incidental statutory right of exclusivity. *Id.*

■ "Agreements transferring patent rights must be either assignments or licenses." *CMS Indus., Inc. v. L.P.S. Int'l, Ltd.,* 643 F.2d 289, 294 (5th Cir.1981). An assignment is defined as a conveyance which transfers the entire bundle of common law rights residing in a patent. *Id.* Any agreement which transfers less than all of the rights in a patent is considered a license, and does not entitle the recipient to sue on the patent in his own name. *Waterman,* 138 U.S. at 255, 11 S.Ct. at 335; *Bell Intercontinental Corp. v. United States,* 381 F.2d 1004, 1010, 180 Ct.Cl. 1071 (1967). *See also* 5 Libscomb, *Walker On Patents,* § 20:2 (3d ed.1988). A license merely grants a party permission to do something which would otherwise be unlawful; it grants immunity from suit rather than a proprietary interest in the patent. *Spindelfabrik Suessen–Schurr Stahlecker & Grill v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 829 F.2d 1075, 1081 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988).

To assign an interest in a patent, a patentee must assign, grant and convey either:

(1) the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent throughout a specified part of the United States.

*Waterman,* 138 U.S. at 255, 11 S.Ct. at 335. As pronounced by the Court in *Waterman,* only three types of assignments in interest are recognized: assignments of the entire interest, assignments of an undivided interest, and assignments of a territorial interest.

The PVPA appears to follow the same conceptual theory and statutory framework as the patent laws in defining who is entitled to sue on a certificate of plant variety protection. The Act declares that "it shall be an infringement of the rights of the *owner* of a novel variety" to sell, sexually multiply or otherwise propagate, produce, or dispense the novel variety without authority, 7 U.S.C. § 2541 (emphasis supplied), and that "[a]n *owner* shall have a remedy by civil action of his plant variety protection." 7 U.S.C. § 2561 (emphasis supplied). By its plain meaning, the statute only permits a party with an ownership interest in a protected variety—through the common law rights to the variety and the certificate of plant variety protection which entitles a breeder to governmental protection—to bring a federal action and enforce the statutory rights granted by Congress. Just like the patent laws, the PVPA apparently does not permit transferral of the statutory right to a cause of action without an assignment of the common law rights to the variety itself.[5] *See* 7 U.S.C. § 2402. Although certificates of plant variety protection have the general attributes of personal property, 7 U.S.C. § 2531, the Supreme Court construed almost identical language under the patent laws as requiring assignment of the com-

---

**5.** Section 2402 states that "a *breeder* ... or his successor in *interest,* shall be entitled to plant variety protection."

Breeder is defined in section 2401(e) as the one who discovers the novel variety or directs the final breeding which creates it. A breeder under the PVPA is the functional equivalent of

an inventor under the patent laws. MAFES is indisputably the breeder of DES 119.

In clarifying the meaning of successor in interest under section 2402, the Act's legislative history states that a breeder, or his successor in *title,* is entitled to plant variety protection. 1970 U.S.Code Cong. and Adm.News, p. 5082.

mon law rights before any interest in the patent's incidental rights of exclusion could be transferred, and it must be presumed that Congress was aware of the Supreme Court's interpretation of the analogous patent statute when it worded PVPA section 2531 in near identical fashion.[6] *Waterman,* 138 U.S. at 255–56, 11 S.Ct. at 335; *Crown Die & Tool,* 261 U.S. at 36–37, 43 S.Ct. at 256–57. *Compare* 7 U.S.C. § 2531 *with* 35 U.S.C. § 261 (language concerning ownership and assignment of statutory rights).

■ The court is mindful that its overarching duty is to construe the PVPA so as to give it the effect which its drafters intended. *Delta and Pine Land Co. v. Peoples Gin Co.,* 694 F.2d 1012, 1015 (5th Cir.1983). Upon reviewing the statutory language of the PVPA, its underlying purpose and legislative history, and its similarity in purpose and construction with the patent laws, the court holds that a party must be an assignee before he is entitled to bring suit in his own name under the PVPA, and that a mere licensee cannot bring suit, except with the owner or through the name of the owner.

PVM argues that the agreement between PVM and MAFES grants PVM authority to sue in its own name, should MAFES choose not to enforce its rights under the PVPA. Specifically, the license agreement states:

It is understood and agreed that licensor shall have the option to take such action as it considers necessary to protect its rights under the Federal Plant Variety Protection Act; but in the event that Licensor notifies Licensee in writing that it has declined to take such action, Licensee may take such action as it considers

necessary to protect Licensor's and/or Licensee's rights under the Federal Plant Variety Protection Act or under any applicable state statute or under common law, or protect any other rights of Licensor as though Licensee owned those rights outright. In either event, each party shall cooperate fully with the other in this regard.

(emphasis supplied).

■ PVM's argument begs the question; the instrument cannot effectively convey to PVM the statutory right to exclude others because the statutory cause of action follows title in the certificate, and title in the certificate can only be assigned by transferring the entire bundle of common law rights as directed by the Court in *Waterman.* *See Crown Die & Tool,* 261 U.S. at 35, 39–40, 43 S.Ct. at 258 (interest in patent not a separable interest which can be assigned; instrument attempting to transfer the statutory cause of action in this manner is ineffective). The question the court must address, then, is whether PVM is an assignee of the PVPA rights issued to MAFES.

The court finds that the agreement between MAFES and PVM is an exclusive license and not an assignment. Upon reading the document it becomes readily apparent that the agreement is essentially an exclusive release and that MAFES and PVM *intended* to leave all ownership rights to DES 119 in the hands of MAFES. Indeed, the agreement refers to itself as an "exclusive license" and PVM has proclaimed itself to be an exclusive licensee throughout the entire case.[7] Even the clause which PVM seeks to enforce "grants" PVM the right to sue *"as*

---

6. While section 2531 also states that an owner may license an exclusive right to use of the variety, this in no way indicates that a cause of action under the PVPA will be transferred to a licensee. Rather, it is merely evidence of Congress' recognition that a license is an accepted method of transferring a common law right in the variety to another while retaining title in the variety itself.

7. "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of

its provisions." *Waterman,* 138 U.S. at 255, 11 S.Ct. at 335. However, the name applied by the parties does give the court insight into the parties' intent at the time the agreement was signed, and the agreement implicitly recognizes the distinction between a license and an assignment. Labelled a "license," the agreement states that MAFES shall *assign* required seed to PVM, and that PVM may not *assign* or otherwise transfer any of its rights under its agreement with MAFES unless it substantially complies with a predesignated form.

**254**

*though* " it actually owned the right. More importantly, MAFES solely retains its common law right to *produce* and supply to PVM all *initial* generations of DES 119, while PVM receives the right to "enjoy, commercialize, *market* and *sell*" DES 119 to sublicensees, who then in turn may produce *future* generations of seed. By exclusively retaining its right to produce the initial seed generation, and by conveying to PVM only the power to use and convey the foundation class seed provided, it is clear that the parties intended for MAFES to exclusively retain one of its common law rights in the variety and all of its ownership interest in DES 119 and the certificate of plant variety protection.

### III. CONCLUSION

PVM's motion for a preliminary injunction must be denied because, as an exclusive licensee, PVM is unentitled to sue the defendants solely in its own name. For this reason the court need not address the defendants' remaining arguments and it expresses no opinion regarding their merits. However, much to the court's concern, the defendants appear to have willfully engaged in unlawful conduct. And, as an exclusive licensee, PVM may be entitled to allege a cause of action against the defendants, either in conjunction with MAFES or through the use of MAFES' name. *Independent Wireless Telegraph Co. v. Radio Corp.*, 269 U.S. 459, 468–75, 46 S.Ct. 166, 169–72, 70 L.Ed. 357 (1926).

Consequently, the court will withhold ruling on the defendants, motion to dismiss for thirty days, during which time the plaintiff may wish to consider dismissing its complaint and filing a new action, amending its complaint or taking other procedural precautions which it deems necessary.

An order in accordance with this opinion will this day issue.