**In re Jimmy Joe FULKS, Debtor.**

**No. 9:03–bk–08684–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Jan. 24, 2006.

Robert S. Cohen, Cohen & Kendziorra, P.A., Ft. Myers, FL, for Debtor.

## *SECOND ORDER ON TRUSTEE'S MOTION FOR ORDER VACATING SALE TO DEBTOR AND FOR AUTHORITY TO SELL CERTAIN ASSETS* (Doc. No. 130)

ALEXANDER L. PASKAY, Bankruptcy Judge.

This is the Chapter 7 liquidation case of Jimmie Joe Fulks (Debtor) and the instant matter under consideration is a Motion for Order Vacating Sale to Debtor and for Authority to Sell Certain Assets, filed by Diane Jensen, Trustee of the estate of the Debtor (Trustee).

In her Motion, the Trustee requests (1) the entry of an Order vacating the sale of two boat design Patents, U.S. Patents Nos. 6,032,606 and 6,161,496 (the Patents) to the Debtor for $1,000.00 on the grounds of fraud, misrepresentation, new evidence and mistake, and (2) approval of the Trustee's anticipated sale of the Patents to a higher bidder free and clear of liens together with all rights of past actions for infringement. In her Motion, the Trustee further states that she has received a firm offer to purchase all rights in the Patents described, including all rights of past actions, for $250,000.00 cash. If necessary, she is willing to hold an auction to determine the highest bid.

In support of her allegations of fraud, misrepresentation, and mistake, the Trustee states that she learned for the first time recently that the Debtor failed to disclose known pre-petition claims for "unquestionable" past infringement of the Patents on his Chapter 7 Schedule B. The Trustee contends that she just recently learned that the Debtor also failed to disclose valuations that the Debtor and his C.P.A. performed on the Patents that indicated that the Patents could be worth hundreds or perhaps thousands of dollars per boat, the valuation of which if true would make the Patents worth a large sum in view of the significant number of the boats with this design sold in the market. The Trustee also contends that the Debtor failed to disclose his interest in unliquidated and contingent claims based on past infringement of the Patents by stating in his Response to Question 20 or Schedule B that he had "none."

The Trustee contends that, relying on these facts, she sold the Patents back to the Debtor for $1,000.00 in a private sale and that after the Debtor acquired the Patents, he filed Patent infringement cases in Texas against several boat manufacturers asserting prepetition claims which he had omitted on his asset schedules.

The Trustee contends that she had no intention of transferring any right of action for past infringements of Patents, and nothing in the Bill of Sale, or any of the sale documents, indicates that the Trustee was transferring any past claims or right of action for past infringement. Based on the foregoing, the Trustee contends that the Debtor should not be permitted to profit from the misrepresentation at the estate's expense.

In opposition to the Trustee's Motion, the Debtor contends that there is no legal or factual basis to set aside the sale of the Patents to the Debtor and the only fraud, misrepresentation or newly discovered evidence, if the Court finds it may have existed, they were the results of mistakes of the Trustee in drafting the Motion to Sell and the Trustee's failure to review the

record in this case and to investigate the true value of these two Patents.

In addition, the Debtor contends that the record is clear that the Debtor did identify under oath the potential market for these Patents, the existence of actual and potential Patent infringement claims, and the identity of the potential infringers of these Patents. All these disclosures were made in the summer of 2003 at the very outset of this case. According to the Debtor, the Trustee made a knowing, conscious, deliberate decision to sell to the Debtor all right title and interest to the Patents, following which she certified to the Court that all assets of the estate had been fully administrated.

In opposing the Trustee's Motion, the Debtor also contends that the Motion should be denied in its entirety based on the following:

(1) The Motion is untimely.

(2) The Motion fails to disclose any newly discovered evidence, mistake or fraud regarding the potential infringement claims and the Patents.

(3) The Trustee and the current bidders waived any objection to the sale of the Patents to the Debtor.

(4) The sale of the Patents included any past, actual or potential infringement claims.

Both the Trustee and the Debtor now rely on a stipulated record of the following facts which are relevant and germane to the issues raised by the motion and they can be summarized as follows:

On April 29, 2003, the Debtor filed his voluntary Petition for Relief under Chapter 7. The Petition was filed with a Summary of Schedules, Schedules A—J, Statement of Financial Affairs, Attorney Statement of Compensation.

On his Schedule B, the Debtor listed numerous personal properties in which he had an interest. Among the numerous specifically identifiable properties, he listed his interest in Patent Nos. 6,032,606 and 6,161,496 with the U.S. Patent and Trademark Office. The interest was identified that "the Debtor was the inventor of the boat design covered by the Patents." On the right-hand column of the schedules the Debtor valued his interest in these Patents at "zero."

In response to Question No 20 on Schedule B which calls for the disclosure of the Debtor's interest in any contingent, and unliquidated claims of every nature, the Debtor responded by stating "none."

In due course, the Trustee scheduled a Meeting of Creditors pursuant to Section 341 which was initially held on June 11, 2003. But because the Debtor failed to present his Social Security number, it was not concluded and was rescheduled for June 25, 2003. At the first session of the Meeting of Creditors, the Trustee questioned extensively the Debtor about the Patents and the value of the Patents. The following colloquy ensued which reads as follows:

THE TRUSTEE: Okay. You have a Patent that you list on here?

THE WITNESS: Yes, ma'am.

THE TRUSTEE: Have you ever tried to sell the Patent?

THE WITNESS: No, ma'am.

THE TRUSTEE: Does it have any particular value, independent value?

THE WITNESS: I believe it does.

THE TRUSTEE: Okay. Who—if I were to try to sell it, to whom would I try to sell it?

THE WITNESS: Boat (inaudible)

THE COURT REPORTER: I'm sorry?

THE TRUSTEE: To whom?

THE WITNESS: Boat Builders.

THE TRUSTEE: Boat Patent. What is—what is the Patent to do?

THE WITNESS: It's a design, a structural design that I developed.

(Exhibit D, Transcript of 341 hearing on June 11, 2003, page 23).

At the rescheduled meeting of creditors, the Trustee further questioned the Debtor about the Patents. The record leaves no doubt that the Debtor informed the Trustee of the infringement on the Patents by Chaparral and by other infringers. The Debtor again testified under oath and stated in response to the question whether he ever tried to sell the Patents that he did not. In response to the question whether the Patents have any value, he stated again in the affirmative. The following colloquy is of great importance. For this reason it is set forth verbatim.

Q. Do you have any idea who the market—what market—how to market them?

A. Well, they were infringed upon at one time or they still are, and the attorneys, Philadelphia attorneys we retained, said it would take over half a million dollars to start to enforce our Patents, so I didn't pursue it.

Q. But you believe they still have value.

A. Yes, ma'am.

Q. Do you have any idea who the appropriate people to sell them might be—if there is a—how to get—

A. Most any upscale boat company, pleasure boat company.

Q. Upscale pleasure boat company. Can you give me suggestions of names?

A. They are infringing, Sea Ray is one, Chaparral is one of the major ones, Four Winds.

Q. You say they are infringing now?

A. Yes, ma'am.

(Exhibit E, Transcript of 341 hearing on June 25, 2004, pp. 5–6)

The record reveals that shortly after the second 341 meeting, on or about July 2, 2003, prior to the sale of the Patents to the Debtor, the Trustee received an inquiry regarding the purchase of the Patents from D.V. & A, a company seeking Patents for inventory in successful consumer product companies (Exhibit G, DJ149). It does not appear that this interest was explored any further.

On or about October 2003 the Trustee inquired of counsel for the Debtor if the Debtor intended to surrender the Patents to the Trustee and whether the Debtor would be interested in repurchasing them (Exhibit I, DJ78). On October 8, 2003, counsel for the Debtor confirmed in writing to the Trustee that the Debtor is surrendering his interest in the Patents to the Trustee but expressed no interest in repurchasing his interest in the Patents. (Exhibit A, DJ81)

There is no evidence in this record that would warrant the finding that the Trustee attempted to sell the Patents to anyone between October 2003 and December 2003, even though the Debtor informed the Trustee about the potential market for the sale and, in fact, identified the parties that were or may be infringing on those Patents.

On December 2, 2003, the Trustee offered to sell to the Debtor all the estate's right, title and interest in the two Patents for $1,000.00 (Exhibit K, DJ72). Specifically, the Trustee's offer was read as follows: "Please let me know if [Fulks] might be willing to repurchase the interest in the Patent for $1,000.00. Otherwise, I will put it up for public sale on the NABT site and sell it in that fashion."

On December 11, 2003, the Debtor accepted the Trustee's offer through his counsel (Exhibit L, DJ170). On December

17, 2003, the Trustee prepared and served her "Report and Notice of Intention to Sell Property of the Estate at Private Sale" (Docket No. 80). In her Notice she identified the property to be sold as the two Patents. In her Notice she also stated that pursuant to Local Rule 2002–4, the Court will consider the Motion, objections to the sale, if any, or any other matter without further notice of hearing unless a party in interest files an objection within 20 days of date of the service of the Notice. The notice indicated that if no one files an objection within the time fixed by the notice, the matter will be considered without further notice and hearing and the relief requested may be granted. In paragraph 3 of the Notice, the Trustee stated that the properties would be sold subject to any and all liens of record as well as any and all easements, restrictions, reservation of record, back taxes if any, current and subsequent taxes if any, any and all maintenance fees and/or assessment of any sort.

It appears that the Trustee's Report and Notice of Intent to Sell was properly mailed to all parties of interest and all scheduled creditors, including Brunswick Corporation at 1 North Field Court, Lake Forrest, Illinois, 60045–4811. Brunswick was listed on Schedule F as a holder of an unsecured claim in the amount of $2,500,000.00 based on a judgment it obtained against Mariah Boats, Inc., and possibly the Debtor. Mariah Boats, Inc., was a corporation of which the Debtor was the President and principal owner.

Since no objection to the proposed sale was filed by any one, the Trustee closed the sale on February 3, 2004, and executed a Bill of Sale of the two Patents previously described. In the Bill of Sale the Trustee recited that she covenants that she is the lawful owner of the goods and chattels, they are free from all encumbrances except as noted above, and she has good right to sell the same. The Bill of Sale does not indicate any encumbrances of any sort of any kind. It is without dispute that the Trustee received the $1000.00 purchase price agreed upon.

On May 18, 2005, the Trustee filed her Final Report in which she stated in Paragraph 2 that she conducted a settlement of the estate, that all assets belonging to the estate had been converted into cash or disposed of pursuant to and in accordance with the Rules and practices of this Court. The Report was accompanied by the required forms by the Office of the U.S. Trustee and indicates, as stated by the Trustee, that the estate of the Debtor had been fully administered and no properties of the estate remain undisposed of.

It was not until October 28, 2005, or approximately eighteen months after the sale was concluded, that the Trustee filed the instant Motion for Order Vacating Sale to Debtor and for Authority to Sell Certain Assets, the matter currently before this Court.

Basically these are the relevant facts which appear from the stipulated record based upon which the Trustee contends that she is entitled to the relief she seeks. The Debtor contends that the Motion is without merit and should be denied in its entirety.

■ Before discussing the specific contentions of the parties, it is appropriate to make the following comments. A central purpose of Bankruptcy is to maximize creditor recovery. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 548 (7th Cir.2003). There is also an equally recognized principle that the finality and integrity of Bankruptcy sales is an overriding matter for consideration and should not be overlooked. There must be a stability in sales and the time must come

when a fair bid is accepted and the proceeding is ended. *In re Chung King* 753 F.2d 547, 550 (7th Cir.1985), (quoting *In re Webcor, Inc.,* 392 F.2d 893, 899 (7th Cir. 1968)). See also *In re Shlensky v. H.R. Weissberg Corp.,* 410 F.2d 1182, 1185–86 (7th Cir.1969).

Although the Trustee's Motion doesn't specify the basis for the relief sought, since it alleged that she is entitled to the relief based on fraud, misrepresentation, newly discovered evidence or a mistake, one must assume that the Motion is filed pursuant to F.R.B.P. 9024, as adopted by Rule 60 of the Federal Rules of Civil Procedure. The Rule is entitled "Relief from Judgment or Order." At first blush it appears that reliance on this Rule is inappropriate since it is without dispute that no judgment or order was ever entered concerning the sale of the Patents by the Trustee.

 However, case law interpreting this Rule does not limit the relief available to cover judgments and orders, but also includes proceedings. The text of the Rule also includes "proceedings." For this reason it might be contended that the sale of the Patents in question was a "proceeding," therefore, it was governed by F.R.B.P. 9024. This Court is not inclined to accept this proposition and is satisfied that the Final Judgment, order or proceeding which may be subject for relief under F.R.B.P. 9024 means there must be a judicial determination which has finality. The Rule cannot be used to enlarge it to cover a proceeding which might occur in the Bankruptcy Case which does not involve a judicial determination with finality. *Hulson v. Atchison, Topeka and Santa Fe Railway Company,* 27 F.R.D. 280 (N.D.Ill. 1960). The proposed sale was never presented for this Court's consideration, no Motion was filed to approve the sale and,

of course, no Order was ever entered to approve the sale.

Based on the foregoing, this Court is satisfied that the matter under consideration is not governed by and cannot form the basis to grant the relief to the Trustee under F.R.B.P. 9024. This leaves for consideration whether the Trustee's claim for relief could be granted on the general principles of common law for fraud, misrepresentation, newly discovered evidence or mistake.

As noted earlier, the Trustee did not expressly rely on F.R.B.P. 9024, but relied specifically on the alleged fraud, misrepresentation, newly discovered evidence or mistake. It is necessary to consider the record to determine whether any of these allegations has been established by persuasive and competent evidence, thus would warrant granting the relief sought by the Trustee.

Considering these allegations seriatim, it is a well established principle that in order to establish a viable claim for fraud the party asserting the claim has the burden to prove all the required elements of an actionable fraud. According to Black's Law Dictionary: "To constitute 'actionable fraud,' it must appear that defendant made a material representation; that it was false; that when he made it he knew it was false, or made it recklessly without any knowledge of its truth and as a positive assertion; that he made it with intention that it should be acted on by plaintiff; that plaintiff acted in reliance on it; and that plaintiff thereby suffered injury." *Black's Law Dictionary* 27 (5th ed.1979). *Vertes v. GAC Properties, Inc.,* 337 F.Supp. 256, 260 (S.D.Fla.1972).

 There is absolutely nothing presented here by the Trustee which would warrant the finding of any fraud committed by the Debtor in conjunction with the sale. The idea to purchase these Patents

was not his. The fact of the matter is that the Debtor turned down the Trustee at first. The sale and the price were both the Trustee's idea and not the Debtor's.

■ The closest the Trustee comes to establishing a viable claim is her allegation that the Debtor was guilty of misrepresentation. To prevail on a claim of fraud based on misrepresentation, it is the burden of the party asserting it to establish with clear and convincing evidence that the Debtor knowingly made a fraudulent statement concerning an existing fact with intent to deceive and the Trustee relied on same and, as a result, suffered a measurable harm.

It is undisputed that the valuation of these Patents on the Schedules were not correct as developed eighteen months later. First, the valuation of these Patents at zero was not a statement of an existing fact, but an opinion. It is true that stating an opinion may be found to be fraudulent if the declarant has knowledge of the true value of the asset involved and grossly undervalues the asset with intent to defraud the Trustee and his creditors. In the present instance, the testimony of the Debtor at the Section 341 Meetings of Creditors belies any fraudulent intent by scheduling the value at zero. Not only did the Debtor state repeatedly at the first and second meeting of creditors that he believed that the Patents have value, that there were and are actions which have and are infringing on the Patent, the Debtor identified the potential market and specifically named some of the infringers as Sea Ray, Chaparral and Four Winds. Sea Ray is apparently a subsidiary of Brunswick and Brunswick was listed on Schedule F as the holder of an unsecured claim based on a judgment it obtained against Mariah Boats, Inc., and possibly the Debtor. Brunswick received the Trustee's Report and Notice of Intention to Sell.

The same comments are also applicable to the claim to the alleged misrepresentation by the Debtor concerning contingent and unliquidated claims which were not scheduled by the Debtor. At the time the Debtor executed the Schedules, there were no suits pending seeking to recover damages for the infringement of these Patents and, according to a patent attorney, it would cost about half-a-million dollars to pursue these claims, a sum certainly not within current budget of this Chapter 7 Debtor.

The contention of the Trustee that she relies on newly discovered evidence is not supported by this record at all. All information was disclosed at the two meetings of creditors for her to make a decision to pursue or not to pursue the matter. She was told that the Debtor, not withstanding the schedules, believed that the Patents had value. This information was more than ample to put the Trustee on notice that the Patents had value and the Patents were being infringed upon. She was told of the ongoing infringement and she was told as to the possible market and also was disclosed the identity of the infringers, all of which would have been logical prospects to purchase the Patents. In fact, the new prospective purchaser is one of the infringers named in the suit filed by the Debtor in the United States District Court seeking injunction and damages for the infringement on his Patents. The fact that the Trustee received an offer to purchase the Patents eighteen months after the sale was concluded from one of the infringers is not newly discovered evidence and cannot be the basis to grant the relief sought by the Trustee. The newly discovered evidence to support the motion must be competent evidence to show that at the time of the sale the Trustee was excusably ignorant of material facts that would have likely produced a different result. *In re St. Ste-*

*phen's 350 East 116th Street, Inc.,* 313 B.R. 161, 173 (Bankr.S.D.N.Y.2004). Clearly it was the duty of the Trustee to exercise reasonable care to ferret out the evidence and before executing the Bill of Sale to conduct sufficient investigation as to the value of the sale and the extent of the infringement and the value of that interest concerning the viability of the claim for infringement. In the present instance the record indicates that the Trustee did not conduct any meaningful investigation of the true value of the Patents, in spite of the fact that she was repeatedly told that the Patents had value and was informed about not only the infringement of the Patents but also the identify of the infringers.

■■■ Next, this record is totally devoid of any competent evidence which would warrant the conclusion that there was a mistake. If there was one, it was not a mutual mistake of material fact, but a unilateral mistake of the Trustee by not pursuing and properly marketing the Patents when the Trustee received sufficient information to be alerted to the facts which could have helped the Trustee market the Patents. Unilateral mistake is not sufficient to rescind a contract or to set aside a sale. Generally, relief in equity will be granted by way of rescission or cancellation of an instrument because of a material mistake of fact that is unilateral where the mistake goes to the substance of the agreement, the party against whom rescission is sought has not changed position in reliance on the contract so as to make rescission unconscionable. *Maryland Cas. Co. v. Krasnek,* 174 So.2d 541 (Fla.1965), *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Anderson,* 445 So.2d 612 (Fla.Dist.Ct. App.3d Dist.1984). Relief from a written contract is not available if the alleged mistake was a unilateral mistake, when the mistake is the result of the party's own negligence and lack of foresight. *Limehouse v. Smith,* 797 So.2d 15 (Fla.Dist.Ct. App. 4th Dist.2001).

The Debtor in his Response also raised the issue concerning what was included in the sale. It is the Debtor's contention that the sale of the Patents clearly included any past, actual or potential infringement claims.

■■■ It is well established that the assignee of a Patent may bring an action to redress any violation of the exclusive rights conferred by the Patent. 35 U.S.C. § 271 (1994). It is self evident, however, that an infringement harms only the owner of the Patent at the time of the infringing acts. *United States v. Loughrey* 172 U.S. 206, 211–12, 19 S.Ct. 153, 155, 43 L.Ed. 420 (1898). Thus the conveyance of a Patent does not necessarily normally include the right to recover for injury occurring to the prior owner before the assignment or sale of the Patent. *Crown Die & Tool Co. v. Nye Tool & Mach. Works,* 261 U.S. 24, 43, 43 S.Ct. 254, 259, 67 L.Ed. 516 (1923)

■■■ In the case of *Arachnid, Inc., v. Merit Industries, Inc.,* 939 F.2d 1574 (1991) the Court held that the transfer of the right to sue cannot be inferred from the assignment of the Patent itself. As the Supreme Court stated in the case of *Moore v. Marsh,* 7 Wall. 515, 74 U.S. 515, 522, 19 L.Ed. 37 (1868) it would be a great mistake to suppose that the assignment of the Patent carries with it the right to sue for past infringements. The foregoing cases leave no doubt that the general rule is the right to sue for prior infringement is not transferred unless the assignment agreement manifests a clear intent to transfer the right. While it is true that neither the Statute nor common law precedent requires a particular formula or set prescription of words to express that conveyance, nevertheless, it must be evident from the documentation of the transaction

a clear intent to sell or assign the right to sue when the interest in the Patent was assigned or sold to a party.

In the present instance the transaction is documented by a very simple boilerplate Bill of Sale which purported to transfer to the Debtor "Patent No. 6,032,-606 and Patent No. 6,161,495." The Bill of Sale further indicates that the buyer is taking title to the property with the understanding that the "Buyer is taking the property in an 'as-is, where-is' condition, and Trustee makes no representations as to condition, value or authenticity of any property." The Trustee in her Bill of Sale also recited that she covenants that she is the lawful owner of the "good and chattels" that they are free from all encumbrances except as noted above, she has a good right to sell the same. Although there is nothing expressly spelled out in the Bill of Sale form used by the Trustee which, by the way, was not very suitable to reflect this transaction, the totality of the picture leaves no doubt that the Trustee's sale was contemplated to include all right flowing from the sale, including the right to sue for past and future infringement on the Patents.

The totality of the evidence compels the conclusion that these rights were intended to be included based on the fact the Trustee filed her final report and accounting. Her final report stated under oath that all assets of the estate had been liquidated and there were no properties remained which were to be administered.

This leads to the ultimate question concerning whether or not the relief sought by the Trustee, which is to set aside the sale should be granted based on this record. Ordinarily one would have no difficulty to conclude that the Trustee has failed to establish the right to the relief she is seeking to have the sale set aside. However, the Court has a duty to assure that administration of assets are done properly and serves the paramount interest of the creditors of the estate by maximizing the return the Trustee realizes from the liquidation of assets. Thus, based on Section 105 of the Bankruptcy Code it is proper for this Court to consider whether the sale should be set aside on equitable grounds.

The only redeeming feature of her position is that the price paid by the Debtor for the Patents is grossly inadequate. It should be noted that in her Motion, the Trustee does not actually seek to set aside the sale on the grounds of grossly inadequate price.

In the case of *Standard Fuel & Furnace Oil Co. v. Mason (In re Jewett & Sowers Oil Co.)*, 86 F.2d 497 (7th Cir.1936) the Trustee sold the bankrupt's contract pursuant to which the debtor was entitled to receive commissions from a company for services performed as a salesman. The dispute arose whether or not commissions already earned by the debtor prior to the date of sale were sold. The court stated that while the Bankruptcy Trustee was careless in execution of the assignment of the contract without reservation of earnings which had already been made, thus conveying too great an interest to purchaser. The disproportion between the sale price of $300 and value of contract extending to almost $5,000, was such as to shock the conscience of the court which would not permit buyer to take advantage of such carelessness.

In sum, the fact that the Trustee was careless in not investigating the true value of the Patents in question, and she executed the contract ostensibly intending to divest the estate of whatever interest the estate had in the Patents, including the right to sue for infringement past or future, does not change the undisputed fact

that the Patents were sold by the Trustee to the Debtor and not to an innocent third party. The price paid for these Patents by the Debtor was grossly inadequate and for this reason the sale should be set aside.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Trustee's Motion for Order Vacating Sale to Debtor and for Authority to Sell Certain Assets be, and the same is hereby, granted, and the Trustee shall forthwith tender the purchase price received from the Debtor to the Debtor. The Trustee shall submit an appropriate order nullifying and canceling the Bill of Sale executed February 3, 2004.

DONE AND ORDERED.